The STATE of Ohio, Appellee,

v.

PATTERSON, Appellant.

[Cite as *State v. Patterson* (1996), 110 Ohio App.3d 264.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APA10–1339.

Decided April 4, 1996.

*Michael Miller,* Franklin County Prosecuting Attorney, and *Katherine Press,* Assistant Prosecuting Attorney, for appellee.

*David W. Douglas* and *Blaise G. Baker,* for appellant.

BROGAN, Judge.

Stephen A. Patterson appeals from a judgment entered by the Franklin County Court of Common Pleas upon a jury verdict, finding him guilty of attempted murder with a firearm specification, and sentencing him to an indefinite imprisonment term of ten to twenty-five years. On appeal, Patterson contends that the trial court erred in sentencing him to the maximum term, setting his pretrial bond at an excessive amount, and excluding certain statements from evidence.

On January 13, 1995, the Franklin County Grand Jury returned an indictment charging Patterson with the murder of Derek Rendleman in violation of R.C. 2903.02, the attempted murder of Jon Nesbitt in violation of R.C. 2923.02, and two firearm specifications in violation of R.C. 2941.141. Patterson was subsequently arrested. Upon his arraignment, bond was set at $100,000 surety and $100,000 recognizance. After posting bond, Patterson was released from custody. On February 7, 1995, a second bond hearing was held at the request of the state.

At that hearing, the court raised the surety bond to $500,000. Again, Patterson posted the bond, and was released from custody.

A jury trial was held on September 5, 6, 7, 11, and 12, 1995. At trial, it was established that, at approximately 10:00 p.m. on December 18, 1991, Patterson and his friend Dave Roberts went into a small store located in Columbus, Ohio. In the store they ran into James Pope, Jon Nesbitt, and Derek Rendleman. The testimony indicated that there was a history of conflict between certain members of these two groups of individuals. An argument ensued in the store, and gunshots were fired. As a result of the gunshots, Derek Rendleman was killed and Jon Nesbitt was wounded.

In his defense, Patterson testified that he did not shoot Derek Rendleman. He admitted shooting Jon Nesbitt, but claimed that he acted in self-defense. Jonetta Brown testified that Dave Roberts admitted to her that he had shot Derek Rendleman. Dave Roberts was deceased at the time of trial; however, portions of his statement to police made prior to his death were admitted into evidence.

The jury returned a verdict finding Patterson not guilty of the murder of Derek Rendleman, but guilty of the attempted murder of Jon Nesbitt as well as the gun specification related to that charge. Patterson was subsequently convicted of the charges, and a sentencing hearing was conducted on September 18, 1995. At the hearing, the court indicated that it had received and read a letter from Derek Rendleman's mother. The court also heard a statement from Jon Nesbitt's mother, as well as arguments from each party. Patterson was sentenced to the maximum term of ten to twenty-five years for the charge of attempted murder, and three years for the gun specification.

From the conviction and sentence, Patterson now appeals.

As his first assignment of error, Patterson raises the following:

"The trial court abused it's [sic] discretion in presentence consideration of prejudicial misinformation and disregard of mitigation and mandates of Ohio Revised Code Sections 2930.02, 2947.051, 2929.12, and the Fourteenth Amendment to the United States Constitution."

In support of this assignment of error, Patterson contends that the trial court erred in sentencing him for the following reasons: the court did not consider the statutory factors set forth in R.C. 2929.12; the court failed to order a presentence investigation report and a victim impact statement; and the court improperly considered a letter from Derek Rendleman's mother, a statement made by Jon Nesbitt's mother, and comments made by the prosecutor concerning the murder of Derek Rendleman.

■ As a trial court has broad discretion in sentencing, a reviewing court will not disturb the sentence unless the trial court has abused its discretion in that regard. *State v. Polick* (1995), 101 Ohio App.3d 428, 431, 655 N.E.2d 820, 821–822; *State v. Yontz* (1986), 33 Ohio App.3d 342, 515 N.E.2d 1012, syllabus. Generally, a trial court's exercise of discretion in sentencing will not be reversed if the sentence is within the statutory limit and the trial court considered the statutory criteria set forth in R.C. 2929.12. *Polick, supra.*

■ We first consider Patterson's argument that the trial court erred in failing to consider the statutory factors set forth in R.C. 2929.12. In that regard, Patterson argues that "[t]he maximum sentence in this case without identification of any statutory factor leaves the record suspect and tainted at best, and at worst, indicates disregard for the clear mandates of the law." It is undisputed that the record is silent as to whether the trial court considered the statutory factors. However, it is well established that "[a] silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12." *State v. Adams* (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361, paragraph three of the syllabus; *State v. Cyrus* (1992), 63 Ohio St.3d 164, 166, 586 N.E.2d 94, 95–96. As the record is devoid of any indication that the trial court failed to consider the statutory sentencing factors or even that Patterson brought the issue to the attention of the trial court, we do not find this argument persuasive. See *Adams, supra; State v. Davis* (1983), 13 Ohio App.3d 265, 269, 13 OBR 329, 332, 469 N.E.2d 83, 87–88.

■ Patterson further argues that the trial court erred in failing to order either a presentence investigation report or a victim impact statement. The record clearly demonstrates that a presentence investigation report was neither ordered by the trial court nor requested by the defendant. Crim.R. 32.2(A) provides: "In felony cases the court shall * * * order a presentence investigation and report before granting probation." In applying that rule, the Ohio Supreme Court held that a trial court "need not order a presentence report pursuant to Crim.R. 32.2(A) in a felony case when probation is not granted." *Cyrus, supra,* 63 Ohio St.3d 164, 586 N.E.2d 94, at syllabus. In this case, probation was not at issue during sentencing because Patterson was not even eligible for probation. See R.C. 2951.02(F). Thus, the trial court's failure to order a presentence investigation report was not error.

■ The record also demonstrates that the trial court did not order the preparation of a victim impact statement. R.C. 2947.051 requires the trial court to order the preparation of a victim impact statement prior to sentencing in all criminal cases in which a defendant was convicted of a felony. The victim impact statement must be considered by the trial court in sentencing the defendant.

R.C. 2947.051(A) and 2929.12(A). Thus, the trial court erred in failing to comply with this requirement.

■ However, Patterson has neither demonstrated nor even alleged that he was prejudiced by the trial court's error in that regard. In *State v. Penix* (Oct. 23, 1991), Scioto App. No. 90 CA 1887, unreported, 1991 WL 224180, the appellate court held that the trial court's error in failing to order a victim impact statement was not reversible in the absence of an affirmative demonstration of prejudice by the defendant. In so holding, the *Penix* court stated:

" * * * Generally, the existence of victim impact statements work to the detriment of a criminal defendant, see generally *Booth v. Maryland* (1987), 482 U.S. 496, 504–505 [107 S.Ct. 2529, 2533–2534, 96 L.Ed.2d 440, 449–450]; *United States v. Santana* (C.A.9 1990), 908 F.2d. 506, 507; *United States v. Serhant* (C.A.7 1984), 740 F.2d 548, 551, and are frequently used by prosecutors to counteract mitigating evidence which the criminal defendant is entitled to put in. *Booth, supra*, [482 U.S.] at 517 [107 S.Ct. at 2540, 96 L.Ed.2d at 457–458] (White, J. Dissenting.)" See, also, *State v. Harris* (June 19, 1995), Mahoning App. No. 94 C.A. 63, unreported, 1995 WL 370747; *State v. Wyatt* (Sept. 30, 1992), Portage App. No. 91–P–2409, unreported, 1992 WL 267444.

The record reveals that there was no objection during sentencing, nor was there a request that a victim impact statement be prepared. The record further reveals that the victim, Jon Nesbitt, testified at trial, and that his mother made an oral statement to the court at the sentencing hearing. As Patterson has failed to allege or demonstrate prejudice and we have found none on the face of the record, we do not find this argument persuasive.

Finally, Patterson contends that the trial court erred in considering certain items during the sentencing proceedings. Specifically, Patterson argues that the trial court erred in considering a letter from Derek Rendleman's mother, a statement made by Jon Nesbitt's mother, and comments made by the prosecutor concerning the murder of Derek Rendleman. Patterson's main arguments in regard to the trial court's consideration of these items are that he was not given adequate notice or an opportunity to respond to the statements, and that any consideration by the trial court of any references to the murder of Derek Rendleman was improper.

■ We are not persuaded by Patterson's argument that he was not given adequate notice of, or an opportunity to respond to, the written statement of Derek Rendleman's mother or the oral statement of Jon Nesbitt's mother. Again, there was absolutely no objection at the sentencing hearing to the alleged lack of notice or opportunity to respond to these items. In fact, at the end of the hearing, the trial court asked Patterson if he wanted to speak prior to the

imposition of sentence and he answered, "No." Additionally, after the court stated that it had read Mrs. Rendleman's letter, the court asked Patterson's counsel if there was any reason that sentence should not be imposed at this time and he answered, "No." Furthermore, Patterson has again completely failed to demonstrate or even allege any prejudice resulting from the court's alleged failure to provide him proper notice of the statements or an opportunity to respond. Accordingly, we find this argument to be without merit.

More troubling are the references at the sentencing hearing to the murder of Derek Rendleman, of which Patterson was acquitted. The trial court indicated that it had received a letter from Derek Rendleman's mother, and that it considered the letter to be a victim impact statement. In her oral statement to the court, Mrs. Nesbitt referred several times to the death of Derek Rendleman and its impact on the family. Additionally, in his statement to the court, the prosecutor also referred to the murder of Derek Rendleman:

"I'd ask this Court to consider the reprehensible nature of this act, the fact this young man is dead, and his friend is significantly wounded for no particular reason at all other than the fact that the defendant in this case had a new toy he wanted to try out and so he did and killed Derek. This is an act that for which the defendant was on the run for three and a half years. And I would ask the Court to impose the maximum sentence that it can."

Patterson contends that it was improper for the trial court to have considered the murder of Derek Rendleman in sentencing him on the attempted murder charge because he was acquitted of that crime.

We note that, although there may have been no formal objections during the sentencing proceedings to the various statements concerning the murder and death of Derek Rendleman, defense counsel did strenuously argue, during his statement to the court, against the court's consideration of such evidence. For example, defense counsel made the following statement during his sentencing argument to the court: "The fact that Derek Rendleman is dead is a tragedy. But I will ask the Court to isolate his consideration to the attempted murder." Thus, the potential error was called to the attention of the trial court, and we find that it was properly preserved for review on appeal.

■ Patterson relies on the case of *Columbus v. Jones* (1987), 39 Ohio App.3d 87, 529 N.E.2d 947, in support of his position that it was improper for the trial court to have taken into consideration the murder of Derek Rendleman, of which Patterson was acquitted, in imposing sentence. In that case, we held that it was error for the trial court to impose a more severe sentence because of the trial court's belief that the jury was mistaken in finding the defendant not guilty of

another offense. *Id.* at 89–90, 529 N.E.2d at 949–951. In so holding, we reasoned:

"Even more serious is the action of a sentencing judge increasing a defendant's penalty because the trial court feels the jury was mistaken in finding the defendant not guilty of another charged offense. Such action serves to destroy the effectiveness of the right to jury trial. The trial court is required to accept the jury's verdict and, in sentencing for an offense of which the defendant was convicted, to give no consideration to the evidence tending to indicate defendant to be guilty of the offense of which he was found not guilty by the jury. * * *" *Id.* at 90, 529 N.E.2d at 950.

We conclude that a trial court abuses its discretion in sentencing a defendant, even when the sentence imposed is within the statutory guidelines, if the trial court has considered evidence concerning the acquitted charge. *Id.*

 We are not persuaded to deviate from the law which we announced in *Jones* under the facts of this case. Thus, we agree with Patterson's argument that the trial court erred in considering the various statements at the sentencing hearing concerning the murder and death of Derek Rendleman. We realize that the record does not affirmatively demonstrate that the trial court improperly considered such evidence, as the court did not state on the record its reason for imposing the maximum penalty. However, from the trial court's comment at the hearing that it considered Mrs. Rendleman's letter to be a "victim impact statement," it is a fair inference that the court did, in fact, consider that statement in imposing sentence. As the maximum penalty was imposed, we cannot say that Patterson was not prejudiced by the error.

The first assignment of error is sustained in part.

As his second assignment of error, Patterson raises the following:

"The absence of reasons given by trial court for increasing bail bond was an arbitrary denial of defendant's fundamental interest in liberty pending trial and deprivation of property contrary to Article I, Section 9, Ohio Constitution; the Eighth and Fourteenth Amendments, U.S. Constitution: Ohio Criminal Rule 46; and Ohio Revised Code Section 2937.23."

In support of this assignment of error, Patterson argues that the trial court erred in setting his pretrial bond at an excessive amount. Patterson contends that the trial court did not consider the appropriate factors in setting the bond amount and, thus, the court's decision was arbitrary and violative of Patterson's constitutional and statutory rights.

 After conviction, any error concerning the issue of pretrial bail is moot. See *State v. Head* (Nov. 21, 1991), Cuyahoga App. No. 59367, unreported,

1991 WL 243864; *State v. Salina* (Mar. 31, 1981), Columbiana App. No. 80–C–24, unreported, 1981 WL 4862; *State v. Bonarrigo* (May 22, 1980), Cuyahoga App. No. 41300, unreported. The proper procedure for seeking relief for excessive pretrial bail is through habeas corpus proceedings. *State ex rel. Baker v. Troutman* (1990), 50 Ohio St.3d 270, 553 N.E.2d 1053; *Jenkins v. Billy* (1989), 43 Ohio St.3d 84, 538 N.E.2d 1045; *State v. Bevacqua* (1946), 147 Ohio St. 20, 33 O.O. 186, 67 N.E.2d 786. We find no reason to deviate from this rule under the facts of this case. Thus, Patterson may not raise this issue on direct appeal of his conviction.

The second assignment of error is overruled.

As his third assignment of error, Patterson raises the following:

"The trial court erred in excluding vital exculpatory and inculpatory evidence of a defense eye-witness contrary to Evid.R. 804, Article [I], Section [10], Ohio Constitution, and the Fourteenth Amendment to the U.S. Constitution."

In support of this assignment of error, Patterson contends that the trial court erred in excluding from evidence certain portions of Dave Roberts's statement made to police. Patterson argues that, because the excluded testimony had potentially exculpatory value to him, his due process rights were violated by its exclusion.

At trial, Patterson moved to admit Dave Roberts's out-of-court statement to police on the basis of Evid.R. 804(B)(3). Upon the prosecution's objection to the admission of the entire statement, the trial court ruled that only portions of the statement were admissible: "[V]ery limited portions, however, of the interview qualify as a statement against interest and it is only those statements against interest which are admissible."

Neither party disputes the court's determination that Roberts's out-of-court statement constitutes hearsay and, as such, was generally inadmissible as substantive evidence. See Evid.R. 802. Exceptions to the hearsay rule are set forth in Evid.R. 804(B). That section includes the following exception for statements against interest made by a nonparty:

"(B) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"* * *

"(3) *Statement Against Interest.* A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant

believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Evid.R. 804(B).

At trial, it was clearly established that Roberts was deceased at the time of the trial due to causes unrelated to the incident underlying the charges against Patterson. Thus, pursuant to the definition of "unavailability as a witness" set forth in Evid.R. 804(A), which includes death of the declarant, Roberts was unavailable to testify at trial.

 Because Roberts was unavailable to testify at trial, his pretrial statement to police was admissible into evidence as an exception to the hearsay rule if the additional requirements of Evid.R. 804(B)(3) were met. As neither party raises any argument concerning the requirement that corroborating circumstances indicating the trustworthiness of the statement were present, we need not review that issue. We note, however, that the trial court has broad discretion in determining whether such corroborating circumstances exist. See *State v. Landrum* (1990), 53 Ohio St.3d 107, 114, 559 N.E.2d 710, 720.

 Additionally, Patterson does not argue that the trial court erred in its factual determination that certain portions of the statement did not tend to subject Roberts to criminal liability and, thus, were not statements against his interest. Rather, Patterson contends that the trial court erred in excluding the statements because "both exculpatory and inculpatory verbiage in an extrajudicial statement such as herein is admissible." Patterson cites *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297, as his sole authority in support of this argument.

In *Chambers,* the United States Supreme Court held that the defendant's due process rights were violated when the trial court excluded the out-of-court statements of a declarant to three separate witnesses that he had actually committed the crime with which the defendant was charged. At the time of trial, Mississippi did not recognize an exception to the hearsay rule for declarations that are against the penal interest of the declarant. In reversing the conviction, the Supreme Court held that the excluded testimony should have been admitted because the testimony "bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest." *Id.* at 302, 93 S.Ct. at 1049, 35 L.Ed.2d at 313. In so holding, the Supreme Court relied on its determination that "each confession here was in a very real sense self-incriminatory and unquestionably against interest." *Id.* at 300–301, 93 S.Ct. at 1048, 35 L.Ed.2d at 312.

We do not find the legal propositions set forth in *Chambers* supportive of Patterson's position in this case. *Chambers* does not stand for the proposition that a defendant is entitled to introduce *all* exculpatory and inculpatory matter in out-of-court statements; rather, *Chambers* stands for the broad proposition that the hearsay rule "should not be applied mechanistically" to exclude hearsay testimony that is *trustworthy* in cases where an accused's constitutional rights are implicated. *Id.* at 302, 93 S.Ct. at 1049, 35 L.Ed.2d at 312–313. Here, in accordance with the Supreme Court's holding in *Chambers*, the trial court allowed the introduction of Roberts's hearsay statements that were against his penal interest and thus were likely to be trustworthy.

Furthermore, the Ohio Supreme Court has held that Evid.R. 804(B)(3) itself, which provides for the introduction of hearsay statements that subject the declarant to penal liability, protects an accused's constitutional rights:

"Through Evid.R. 804(B)(3), Ohio has addressed one of the principal concerns of cases such as *Chambers*, which is that a criminal defendant's reliable evidence should not be excluded through application of hearsay rules that do not adequately protect due process rights. Evid.R. 804(B)(3) strikes a balance between hearsay statements against penal interest which are sufficiently trustworthy to be admissible and those which are not. * * *" *State v. Sumlin* (1994), 69 Ohio St.3d 105, 111, 630 N.E.2d 681, 685.

In accordance with the requirements of Evid.R. 804(B)(3), courts have held that only those portions of a declarant's statement that are actually against interest are admissible. See *State v. Cohen* (Apr. 29, 1988), Lake App. No. 12–011, unreported, 1988 WL 41545 ("[O]nly those portions of [the declarant's] statements which inculpate him and exculpate the appellant here are admissible under Evid.R. 804[B][3]"); see, also, *State v. Young* (1983), 5 Ohio St.3d 221, 228, 5 OBR 484, 490, 450 N.E.2d 1143, 1149–1150, (Celebrezze, J., concurring).

Accordingly, we find no error in the trial court's decision to exclude those portions of Roberts's statement that were not against his penal interest.

The third assignment of error is overruled.

The first assignment of error is sustained in part, and the second and third assignments of error are overruled. Therefore, the judgment of the trial court is reversed in part and the cause is remanded to the trial court for the purpose of resentencing the defendant; in all other respects, the judgment of the trial court is affirmed.

*Judgment accordingly.*

PETREE, P.J., and TYACK, J., concur.

JAMES A. BROGAN, J., of the Second Appellate District, sitting by assignment.