OPINION
Defendant-appellant, Josh Lockhart, appeals the judgment of the Franklin County Court of Common Pleas, whereby appellant was convicted of two counts of involuntary manslaughter, one count of aggravated robbery and one count of aggravated burglary, pursuant to a jury trial.
On December 27, 1999, the Franklin County Grand Jury indicted appellant on two counts of aggravated murder with death specifications, in violation of R.C. 2903.01. The aggravated murder charges stemmed from the killing of James Jackson during an alleged aggravated robbery and aggravated burglary at his home on 1327 East Seventeenth Avenue, Columbus, Ohio. Appellant was also indicted on one count of aggravated robbery, in violation of R.C. 2911.01, naming victim Noel Miller, another resident of 1327 East Seventeenth Avenue. In addition, appellant was indicted on one count of aggravated burglary, in violation of R.C. 2911.11, again naming Noel Miller as the victim. Finally, appellant was indicted on one count of attempted murder, in violation of R.C. 2923.02 and 2903.02. The attempted murder charge alleged that appellant was involved in the attempted murder of Noel Miller. Each of the above charges contained firearm specifications. Appellant pleaded not guilty to the above charges and a jury trial commenced.
Plaintiff-appellee, the state of Ohio, called Noel Miller, the victim, to testify at trial. Miller testified that, on the evening of November 4, 1999, several individuals forced their way into his home, and one of the individuals made him lie on the floor. Miller also noticed that one of the individuals ran upstairs to the second floor. Eventually, according to Miller, Jackson was shot and one of the individuals stole $130 in cash from Miller's back, left pocket. Miller noted that, before the home invasion ended, he was shot by an individual carrying a Tech Nine firearm.
Shannon Savage and her friend Tammekka Williams were visiting Miller and Jackson on the evening of November 4, 1999. Savage testified that she witnessed several individuals forcing their way into the home. When the individuals entered, Savage ran upstairs to the second floor and hid in the bathroom. While upstairs, Savage heard people on the main floor, saying, "[w]here's it at, where's it at." Savage also testified that, while she was upstairs, someone approached her yelling, "[c]ome out or I'm going to start shooting, blasting." She noticed that the individual was pointing a firearm; however, according to Savage, "by the time I could have come out or anything there was shots fired downstairs and he ran back downstairs."
Roshawn Tatum testified that he was involved in the home invasion. At trial, Tatum identified appellant and a man named Jamil Cotton as his accomplices. Tatum testified that he was carrying an Inter Tech Nine millimeter firearm during the incident and that appellant was using a .32 Smith and Wesson firearm. According to Tatum, he and his accomplices carried out the home invasion to steal money and marijuana from Jackson. Tatum also noted that he and his accomplices agreed that "if somebody got shot then everybody was supposed to shoot somebody, too. That way we have something to hold over each other's head."
In explaining the different roles of the accomplices, Tatum claimed that "[a]s soon as we entered the house [appellant] ran straight upstairs." Tatum also testified that Cotton and appellant shot Jackson. As well, Tatum indicated that:
 I got up and I was on my way out. We was all ready to flee and when I got to Noel Miller, Jamil Cotton gave me a look, you know, letting me know that, you know, like I was not getting out of there without shooting somebody. *** So that's when I pointed my gun at Noel and shot him in his butt.
Cotton also testified on behalf of appellee. Cotton testified that he was involved in the home invasion with appellant and Tatum. Cotton stated that he had a .38 caliber revolver during the incident, that Tatum had a Tech Nine firearm, and that appellant had a .32 caliber revolver. Cotton confessed to shooting Jackson in the knee. Cotton further recalled appellant being upstairs during part of the home invasion and, eventually, running down the stairs and shooting Jackson. Finally, according to Cotton, Tatum shot Miller before the home invasion ended.
Detective J. Timothy O'Donnell interviewed appellant after he was arrested. Detective O'Donnell testified that appellant initially denied having any part of the home invasion. Eventually, according to Detective O'Donnell, appellant admitted to being involved in the incident and identified Tatum and Cotton as accomplices. Appellant told Detective O'Donnell that he and the accomplices carried out the home invasion to rob Jackson. However, appellant denied carrying a firearm during the incident and, moreover, denied shooting anyone.
Detective O'Donnell testified that he also interviewed Cotton. Cotton originally claimed no involvement in the home invasion. Eventually, Cotton admitted to shooting Jackson in the knee. Cotton also told the detective that appellant shot Jackson from the staircase. The detective noted that he also interviewed Tatum. Tatum initially told Detective O'Donnell that he was just a "lookout" during the incident, but eventually, Tatum confessed to having a more active role in the home invasion. Tatum also told the detective that he carried the Tech Nine and that he shot Miller. In addition, Tatum indicated that both Cotton and appellant shot Jackson.
Dr. Dorothy Dean from the Franklin County Coroner's Office examined Jackson after he died. Dr. Dean testified that Jackson suffered one gunshot wound to the knee and one gunshot wound to the back. According to Dr. Dean, the bullet that entered Jackson's back landed in his pelvic area. The doctor stated that the bullet that entered Jackson's knee remained in that area of his body. Finally, Dr. Dean testified that Jackson "died from a gunshot wound to his back with bleeding in some internal organs."
Columbus Police Department Criminalist Mark Hardy examined the bullets found in Jackson's body. Hardy identified the bullet recovered from Jackson's knee as a .38 caliber bullet fragment, and identified the bullet recovered from Jackson's pelvic area as a .32 caliber bullet.
At the close of all evidence, the jury deliberated and found appellant not guilty on the two counts of aggravated murder in the death of Jackson; however, the jury found appellant guilty of two counts of involuntary manslaughter, the lesser included offense to aggravated murder. The jury also convicted appellant of one count of aggravated robbery and one count of aggravated burglary. As well, the jury found appellant guilty of the firearm specifications that attached to the above convictions.
The trial court merged the involuntary manslaughter charges and sentenced him to nine years of imprisonment on the merged charges. The trial court further ordered appellant to serve eight years imprisonment on the aggravated robbery and aggravated burglary charges. The trial court ordered appellant to serve the sentences on the non-merged charges consecutively. Finally, the trial court ordered appellant to serve an additional three years imprisonment on the firearm specifications.
Appellant appeals, raising two assignments of error:
ASSIGNMENT OF ERROR ONE
 THE VERDICT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE AND THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY. THIS DENIED APPELLANT A FAIR TRIAL AND DUE PROCESS OF LAW AS GUARANTEED BY THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.
ASSIGNMENT OF ERROR TWO
 THE TRIAL COURT ABUSED ITS DISCRETION BY INJECTING ITS VIEW THAT THE DEFENDANT WAS GUILTY OF CERTAIN CHARGES AND CONSIDERING EVIDENCE RELATING TO THESE CHARGES IN SENTENCING THE DEFENDANT, NOTWITHSTANDING THE JURY'S VERDICT FINDING THE DEFENDANT NOT GUILTY OF THESE SAME OFFENSES.
In his first assignment of error, appellant contends that his convictions are based on insufficient evidence. We disagree.
Sufficiency of evidence is the legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. When reviewing whether a verdict is supported by sufficient evidence, an appellate court examines the evidence in the light most favorable to the prosecution and concludes whether any rational trier of fact could have found essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273. In determining whether a conviction is based on sufficient evidence, we do not assess whether the prosecution's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. See Jenks, paragraph two of the syllabus; State v. Jordan (Dec. 19, 2000), Franklin App. No. 00AP-414, unreported; State v. Moore (Sept. 5, 2000), Franklin App. No. 00AP-64, unreported.
Here, as noted above, appellant was convicted on two counts of involuntary manslaughter in the death of Jackson. R.C. 2903.04(A) defines involuntary manslaughter and states that no person shall cause the death of another "as a proximate result of the offender's committing or attempting to commit a felony." Thus, before the jury could find appellant guilty of involuntary manslaughter, it was required to conclude that Jackson died as a result of appellant committing a felony. As noted in the indictment against appellant, the applicable underlying felonies in this case are aggravated robbery and aggravated burglary.
R.C. 2911.01(A) defines aggravated robbery and provides, in pertinent part:
 No person, in attempting or committing a theft offense, *** or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]
Here, as noted below, the record satisfies elements of the underlying aggravated robbery offense. The record establishes that appellant was involved in "attempting or committing a theft offense" at the home of Jackson and Miller. Appellant's accomplices, Tatum and Cotton, testified that appellant was an active participant in the home invasion. The accomplices claimed that they wanted to steal money and marijuana from Jackson. Appellant himself informed Detective O'Donnell that he participated in the home invasion with Cotton and Tatum for purposes of carrying out a robbery.
The record also demonstrates that appellant had a "deadly weapon" on his person during the home invasion. A "deadly weapon" is any "instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon." R.C. 2923.11(A). According to R.C. 2923.11(B)(1), a firearm is a deadly weapon. In this case, both Tatum and Cotton testified that appellant was in possession of a .32 caliber firearm.
Finally, the record establishes that appellant displayed his weapon during the home invasion. As noted above, Savage testified that she was upstairs during the home invasion and saw a man pointing a firearm yelling, "[c]ome out or I'm going to start shooting, blasting." The jury may infer that appellant was the individual seen by Savage, because Tatum and Cotton testified that appellant was the accomplice that went upstairs. In addition, the record establishes that appellant used his firearm to shoot Jackson as noted below.
The record also satisfies elements of the underlying aggravated burglary offense. R.C. 2911.11(A) defines aggravated burglary and states, in pertinent part:
 No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure *** any criminal offense, if any of the following apply:
***
 (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.
As noted above, Cotton and Tatum testified that they and appellant forced their way into the home of Jackson and Miller to carry out the robbery. The record further demonstrates that Miller and Jackson were present during the home invasion, along with other visitors. When Miller testified about the incident, he confirmed that the individuals involved forced their way into the home. Finally, the record establishes that appellant had a deadly weapon on his person during the invasion.
Because the record supports appellant's committing the underlying felony offenses of aggravated robbery and aggravated burglary, we next examine whether Jackson died "as a proximate result" of appellant's committing the underlying offenses.
Cotton testified that appellant shot Jackson in the back with a .32 caliber firearm. Hardy confirmed Cotton's testimony by identifying the bullet that entered Jackson's back as a .32 caliber bullet. Dr. Dorothy Dean from the coroner's office testified that Jackson died from the gunshot wound to his back. Accordingly, the record establishes that appellant fired the shot that killed Jackson and, therefore, Jackson died as a proximate result of appellant committing the underlying offenses of aggravated burglary and aggravated robbery. Thus, the record supports appellant's involuntary manslaughter convictions.
Appellant was also convicted of committing aggravated burglary on Miller, an occupant of the home subject to the invasion. Based on the above discussion on aggravated burglary, the record supports this conviction.
In addition, appellant was convicted of committing aggravated robbery on Miller. Again, the record supports this conviction because, in addition to the above discussion on aggravated robbery, Miller testified that $130 in cash was taken from his pants' pocket. While Miller did not indicate that appellant personally stole the cash, appellant is guilty of the aggravated robbery of Miller under principles of complicity because appellant aided his co-defendants in the crimes that occurred during the home invasion. See R.C. 2923.03(F).
Finally, appellant was convicted of firearm specifications that attached to each of the above offenses. Pursuant to R.C. 2941.145, a firearm specification attaches to an offense committed while the offender had a firearm on or about his or her person or control and, in addition, displayed, brandished or indicated his or her possession of the firearm. Through the above-noted evidence, the record establishes that appellant possessed a firearm while committing the offenses subject to the firearm specifications. As we previously stated in this opinion, the record also establishes that appellant displayed the firearm while committing the offenses.
Accordingly, we conclude that the record contains sufficient evidence in support of appellant's convictions of involuntary manslaughter, aggravated robbery and aggravated burglary. The record also contains sufficient evidence in support of appellant's convictions on the firearm specifications.
Appellant also contends in his first assignment of error that his convictions are against the manifest weight of the evidence. Again, we disagree.
In determining whether a verdict is against the manifest weight of the evidence, we sit as a "thirteenth juror." Thompkins, at 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. Additionally, we determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Columbus v. Henry (1995),105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence is one reserved for only the most "exceptional case in which the evidence weighs heavily against the conviction." Thompkins, at 387.
Here, appellant asserts that the jury was unable to rely on testimony provided by his accomplices, Tatum and Cotton. Appellant claims that the accomplices' testimonies were not credible because they were inconsistent in their statements to the police. However, appellant makes no mention of instances where Tatum and Cotton provided inconsistent information on appellant's role in the home invasion; rather, the inconsistencies primarily centered on their own roles in the invasion. Furthermore, as noted above, the testimony from Tatum and Cotton is supported by the testimony from Savage, Miller and Dr. Dean. Accordingly, we conclude that appellant's convictions are not against the manifest weight of the evidence.
Because appellant's convictions are neither against the manifest weight of the evidence nor based on insufficient evidence, we overrule appellant's first assignment of error.
Appellant's second assignment of error concerns the sentence imposed by the trial court. In his second assignment of error, appellant asserts that, when the trial court considered its sentence, it rejected findings of the jury by indicating that appellant possessed a firearm during the home invasion and that appellant shot Jackson. At the sentencing hearing, the trial court stated:
 *** We have, as I said, competing desires as far as sentencing goes, but the end result is that the court is of the opinion that [appellant] was the shooter in this case. I don't think you can read the evidence any other way. The .32 caliber was in his hands. The .32 caliber killed Mr. Jackson. I personally believe that. Frankly, the jury in this case did not.
According to appellant, the trial court erred in rejecting the jury's findings. In making this assertion, appellant relies on our previous decision in Columbus v. Jones (1987), 39 Ohio App.3d 87, 90. In Jones, we held that the "trial court is required to accept the jury's verdict and, in sentencing for an offense of which the defendant was convicted, to give no consideration to the evidence tending to indicate defendant to be guilty of the offense of which he was found not guilty by the jury." Id.
Appellant also relies on our previous decision in State v. Patterson (1996), 110 Ohio App.3d 264, 271. In Patterson, we held that "a trial court abuses its discretion in sentencing a defendant, even when the sentence imposed is within the statutory guidelines, if the trial court has considered evidence concerning the acquitted charge." Id.
Appellee claims that the trial court's determinations are proper, relying on our previous decision in State v. Epley (Aug. 25, 1998), Franklin App. No. 97APA11-1467, unreported. In Epley, we held that "`a sentencing judge may take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted.'"
We recognize that our decision in Epley diverges from our decision in Patterson and Jones; however, we need not address the diversion because neither Epley, Patterson, nor Jones are directly pertinent to appellant's case. As noted above, these cases apply to situations where the trial court sentences a defendant after considering charges of which a defendant has been acquitted, or indicating that a defendant is guilty of such acquitted charges. Here, the jury acquitted appellant on charges of aggravated murder, which, under R.C. 2903.01(A), involves a purposeful killing. However, a reading of the trial court's statement does not suggest the trial court's disregarding the jury's decision to acquit appellant of aggravated murder; rather, the trial court's statement suggests his concluding that appellant possessed a firearm during the home invasion and that appellant shot Jackson with the firearm. Such conclusions actually comport with the jury's decision to find appellant guilty of involuntary manslaughter and to convict him of the firearm specifications that attach to each of the convictions.
In sentencing appellant, the trial court was entitled, and even required, to consider appellant's conduct during the home invasion. See R.C. 2929.12(B) and (C). In examining whether appellant possessed a firearm during the home invasion and whether appellant shot Jackson, the trial court was essentially complying with R.C. 2929.12(B) and (C) and, under the rationale noted above, was not deviating from the jury's findings.
Accordingly, we conclude that the trial court did not reject the jury's findings when issuing its sentence. As such, we overrule appellant's second assignment of error.
In summary, we overrule appellant's first and second assignments of error, and the judgment of the Franklin County Court of Common Pleas is affirmed.
 ____________________________ KENNEDY, J.
BRYANT, P.J., and TYACK, JJ., concur.