OPINION
{¶ 1} Appellant, Shawn W. Fisher, appeals from the sentence imposed on his plea-bargained conviction for voluntary manslaughter.
 {¶ 2} On June 29, 2001, an off duty Cleveland detective discovered a body later identified as James Beres in the University Circle area in Cleveland, Ohio. The situation which prompted the disposal of Mr. Beres body was the subject of appellant's indictment and subsequent plea.
 {¶ 3} On June 28, 2001, appellant was confronted by an acquaintance, Shawn Hall, to whom appellant owed a fifty dollar drug debt. During the course of the conversation, Hall demanded repayment of the debt and also advised appellant that he was searching for Mr. Beres due to a similar debt. According to Hall, Beres had "ripped off" Brandon Kaseda, Hall's brother, earlier in the day. Beres apparently sought to purchase twenty dollars worth of crack cocaine; however, when Kaseda handed Beres the crack, he drove away, posthaste, without paying.
 {¶ 4} Hall asked appellant and another individual, Isiah Johnson, to help him find Beres. The men filed into a mini-van driven by Hall's friend, Rhonda Head. During its search, the group stopped at a house owned by a woman named Crystal. Crystal told Hall that Beres was not at her home. However, as the group was about to leave, appellant observed Beres through a window in Crystal's home. Appellant alerted Hall who advised Crystal to tell Beres to come outside. Once outside, Hall commanded Beres to pay his brother. When Beres assured Hall that he would pay, everyone, with the exception of Crystal, entered Head's van to find Kaseda.
 {¶ 5} Upon spotting Kaseda on Prospect Street, the van pulled over and Kaseda entered. Kaseda told Beres he wanted his money; despite Beres' assurances that he would obtain the funds, Kaseda began to punch Beres. As the van trundled along, Hall joined Kaseda taunting and castigating Beres. Apparently, throughout the van ride, neither appellant nor Johnson said anything. Eventually, Head drove the van onto a dirt road known as Casement Avenue. Head stopped the van near a dirt mound at the end of the road. Hall commanded everyone to get out. Once outside, Hall and Kaseda commenced a brutal attack on Beres. According to the record, appellant watched the beating, but did not actively participate. After a vicious flurry of kicks and punches, the group left Beres on the dirt road supine, bloody, and unconscious.
 {¶ 6} After leaving the scene, Hall told appellant that he better have his money or he was going to get his "ass whooped." Appellant left and went to a bar in interest of finding someone who owed him money or someone to whom he might sell drugs. After finding someone, appellant contacted Kaseda to arrange the transaction. In the meantime, Hall, who had parted company with the group after the attack, notified Kaseda that Beres was dead. Eventually, Hall, Kaseda, appellant, and Johnson convened at Kaseda's girlfriend's apartment to discuss their course of action. Hall ultimately determined that the group should take Beres' body and dispose of it in Cleveland. To this end, they placed the body in the trunk of Kaseda's girlfriend's car, drove to a park in Cleveland and placed it in a wooded area.
 {¶ 7} On August 9, 2001, the Lake County Grand Jury returned an eight count indictment against appellant charging him with: two counts of aggravated murder; three counts of felony-murder; one count of kidnapping; one count of robbery; and one count of felonious assault. On December 5, 2001, appellant pleaded guilty to the lesser included offense of voluntary manslaughter. The trial court accepted the guilty plea and the matter came for sentencing on January 4, 2002. The trial court then sentenced appellant to the maximum term of ten years imprisonment.
 {¶ 8} From this judgment, appellant filed a timely notice of appeal with this court alleging the following assignment of error:
 {¶ 9} "The trial court erred in sentencing the defendant-appellant to the maximum term of incarceration."
 {¶ 10} Pursuant to R.C. 2953.08, our review of a felony sentence is de novo. State v. Sims (Jan. 17, 2003), 11th Dist. No. 2001-L-081, 2003 Ohio App. Lexis 347. As such, we will not disturb a sentence unless we find, by clear and convincing evidence, that the record does not support the sentence. State v. Bradford (June 2, 2001), 11th Dist. No. 2001-L-103, 2001 Ohio App. Lexis 2487, at 1. R.C. 2953.08(G)(1) allows an appellate court reviewing a felony sentence to increase, reduce, modify, or vacate for re-sentencing if it finds clear and convincing evidence that, inter alia, the record does not support the sentence or the sentence was otherwise contrary to law. 2953.08(G)(1)(a) and (d). Clear and convincing evidence is that evidence which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Id. In the current case, appellant primarily asserts that the trial court's imposition of the maximum term of imprisonment was neither supported by the record nor congruent with Ohio law.
 {¶ 11} When a trial court sentences a party to the maximum term, it must comport with specific criteria set forth in Ohio's sentencing guidelines. Hence, before we address the merit of appellant's claim, an adumbration of the relevant features of Ohio's sentencing guidelines is in order. In State v. Edmonson (1999), 86 Ohio St.3d 324, 329, the Supreme Court of Ohio addressed the statutory requirements for imposing a maximum sentence and determined that "[i]n order to lawfully impose the maximum term for a single offense, the record must reflect that the trial court imposed the maximum sentence based on the offender satisfying one of the listed criteria in R.C. 2929.14(C)." Moreover, we have repeatedly held that the findings mandated by R.C. 2929.12 and 2929.14 must appear in the judgment, the transcript of the sentencing hearing, or somewhere on the record in the sentencing exercise. State v. Starkweather (Mar. 29, 2002), 11th Dist. No. 2001-A-0006, 2002 WL 479883, at 3; State v.Wilson (June 23, 2000), 11th Dist. No. 99-L-026, 2000 WL 816641, at 2;State v. Boles (June 25, 1999), 11th Dist. No. 98-A-0061, 1999 WL 454562, at 4.
 {¶ 12} Once a trial court determines that it must impose a prison sentence as opposed to community control sanctions and the offender has not previously served a prison term, it must impose the shortest authorized prison sentence unless the trial court finds, on the record, that the shortest prison term will either demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by this defendant or other persons. See R.C. 2929.14(B); Edmonson, supra, 86 Ohio St.3d at 325.
 {¶ 13} R.C. 2929.14(C) narrows the trial court's discretion by setting forth the specific circumstances in which it may impose the maximum prison term on a defendant. In determining whether one of the circumstances found in R.C. 2929.14(C) is applicable, a trial court should look at the factors outlined in R.C. 2929.12(B) and (C), which are designed to assess the seriousness of the offense and the factors outlined in R.C. 2929.12(D) and (E), which are designed to assess the likelihood of recidivism. State v. Grissom (Sept 27, 2002), 11th Dist. No. 2001-L-107, 2002 WL 31160086, at 2; State v. Dunwoody (Aug. 5, 1998), 4th Dist. No. 97CA11, 1998 WL 513606, at 2.
 {¶ 14} Furthermore, R.C. 2929.19(B)(2)(d) requires a trial court to state its reasons for imposing the maximum prison term. State v. Sim
(Nov. 1, 2002), 11th Dist. No. 2001-L-134, 2002 WL 31444462, at 4, citingEdmonson, supra, 86 Ohio St.3d at 328. A sentence which merely restates the language of R.C. 2929.14(C) without any consideration of the statutorily relevant factors is inadequate. State v. Kase (Sept. 25, 1998), 11th Dist. No. 97-A-0083, 1998 WL 682392, at 2. Thus, it is necessary for the record to contain some indication, by use of specific operative facts that the sentencing court considered the statutory factors in reaching its determination. Id.
 {¶ 15} In the instant case, the lower court, in large part, complied with the sentencing factors discussed above. That is, it considered the principles and purposes of R.C. 2929.11 and reviewed the relevant "seriousness" and "recidivism" factors under R.C. 2929.12. Pursuant to R.C. 2929.14(B), the court found that the shortest prison term would both demean the seriousness of appellant's conduct and not adequately protect the public from future crime by appellant. Moreover, the court found, "for reasons stated on the record pursuant to R.C.2929.14(C) that the Defendant has committed the worst form of the offense." As a basis for this conclusion, the court found that Mr. Beres' injuries were exacerbated by his physical condition, he was forced to endure serious physical torture, and his ultimate death resulted from an organized criminal activity. See R.C. 2929.12(B). The court also considered R.C. 2929.12(C) and determined that there were no factors that would make appellant's conduct less serious.
 {¶ 16} Although the court never formally determined that appellant stood the greatest likelihood of committing future crimes, it nevertheless discussed the recidivism factors under R.C. 2929.12(D). In doing so, the court determined that appellant committed the current crime while on probation and, at the time of the incident, appellant was away without leave from work release from the Lake County Jail. The court determined that appellant had a history of criminal convictions and had not responded well to previous sanctions. Moreover, the court found that alcohol and drug abuse was related to the offense. In terms of mitigation pursuant to R.C. 2929.12(E), the court expressed its belief that appellant was genuinely remorseful.
 {¶ 17} The court further observed "[i]n making these findings, I have the benefit of having heard your testimony in two trials, the Rhonda Head trial and the Shawn Hall trial, so I'm well-aware of what occurred and your testimony. And I'm incorporating all of that into my findings and I'm taking all of that into consideration, including the fact that you cooperated even before a deal was offered to you and that, in general, from the beginning you were truthful, added more detail as things went on, the second and third statement, and — finally told what I think is the entire story in your testimony. * * * I'm also taking into consideration that you really are guilty of murder."
 {¶ 18} Later in the proceedings, the court continued: "The court finds that this offense was one of the worst forms of the offense, considering the totality of the circumstances, as any more egregious crime would be another crime, murder. And I know, based upon the testimony, that murder is what you're guilty of." The court also stated on record its belief that appellant assisted in the kidnapping of the victim.
 {¶ 19} We note these features of the sentencing proceedings because the court ostensibly relied upon them in rendering its sentence. In our view, such reliance represents an infirmity in the sentencing process for two salient reasons: First, no evidence was expressly presented for the murder charge against appellant and therefore the court was making an unwarranted inferential leap in drawing his conclusion. This is so notwithstanding the court's collective incorporation of the testimony from the two prior trials in which appellant testified as the state's witness. That is, the testimony in the previous trials provided evidence of certain facts linking appellant to the crime(s). However, because appellant was not a defendant in the previous trials, no evidence was put forth to prove appellant was guilty of murder or kidnapping. Thus, the trial court's conclusion was tenuous because it requires recourse to separate trials where no evidence was put forth against appellant.
 {¶ 20} Second, the court's comments suggest it participated in a fact finding exercise for charges that were dismissed and drew its own legal conclusions therefrom. This is problematic because it indicates the court harbored a bias toward appellant when it announced its sentence. That is, the court's belief as to appellant's guilt on the higher charge of murder reflected its own value-laden perspective. Although this perspective was based on what the court heard in two previous trials, the fact remains that the murder charges were dismissed. By commenting on appellant's guilt as to the murder charge, the court demonstrated a belief that appellant was legally accountable for a higher crime. As such, the court's decision to impose the maximum sentence was, at least in part, a function of its belief that appellant was guilty of the dismissed murder charge.
 {¶ 21} Other courts have held that the trial court should not consider the higher offense for which the defendant was not convicted when imposing sentence for a conviction of a lesser included offense.State v. Wells (1999), 133 Ohio App.3d 392, 395, citing State v.Patterson (1996), 110 Ohio App.3d 264. The justification surrounding this rule is a concern that a judge may base his sentence improperly on the higher offense.
 {¶ 22} In Patterson, supra, the appellant was tried and convicted of attempted murder. The sentencing court subsequently imposed a twenty-five year maximum sentence upon the defendant. On appeal, the Tenth District Court of Appeals remanded the case for re-sentencing because the sentencing court made stippled references to a murder charge of which the appellant was acquitted. In doing so, the court stated, "[w]e conclude that a trial court abuses its discretion in sentencing a defendant, even when the sentence imposed is within the statutory guidelines, if the trial court has considered evidence concerning the acquitted charge." Id. at 271. Although the current case is different in many important respects, we share the Tenth District's concern; namely, because the maximum penalty was imposed, it is impossible to say that appellant was not prejudiced by the error.
 {¶ 23} Further, like the current case, the appellant in Wells,
supra, was sentenced to the maximum term of ten years for voluntary manslaughter. During the sentencing proceedings, the trial court stated "[t]his court believes that in allowing a plea to voluntary manslaughter, mercy has been accorded the defendant and he has avoided a life term." Wells, supra at 394-395. As partial justification for reversing the lower court, the Eighth District Court of Appeals held that "the quoted statement may indicate an erroneous reliance on the murder charge, for which no evidence has been presented." Id. at 395.
 {¶ 24} Alternatively, the Supreme Court of Ohio has held that considering evidence relating to a past dismissed charge at the sentencing stage does not constitute reversible error. State v. Wiles
(1991), 59 Ohio St.3d 71, 78.[1] Although this rule is in ostensible conflict with the current case, it does not undermine our conclusion. Specifically, a court's consideration of past dismissed charges does not necessarily imply the court relied upon those past charges in announcing its sentence. For instance, the rule announced in Wiles makes practical sense in the context of a sentence imposed pursuant to a plea to a lesser charge. Under such circumstances, a court may refer to the original charges when discussing its acceptance of a defendant's plea. Such a reference is a form of consideration; however, such a benign reference is not prejudicial to a defendant.
 {¶ 25} A court transcends its discretion when it states that its sentence is based in part or in whole on its conclusion that a defendant is guilty of a higher, dismissed charge. In doing so, we believe the court does not merely consider evidence relating to the higher charge, but manufactures extra evidence as a basis for a higher sentence. In such a scenario, the court's sentence is a product of evidence that was neither produced nor proved. Therefore, although we agree a court can consider evidence relating to a higher dismissed charge, it should not espouse its personal belief regarding a defendant's guilt with respect to that higher charge.
 {¶ 26} To summarize, although the court complied with the statutory sentencing factors, it nevertheless committed the deleterious error of interposing, on the record, its own value laden belief regarding the appellant's guilt on a higher charge of murder. Although appellant was originally charged with murder, no facts were presented during the sentencing hearing on which the court could reasonably and legitimately make this finding. We do not believe the sentencing court should factor in conclusions regarding a defendant's guilt on charges that were never prosecuted. After all, if the court felt so strongly about appellant's guilt with respect to the original charges, it could have rejected the proposed plea agreement. However, because the court accepted the plea and went on to communicate its belief as to appellant's guilt on a non-existent charge, it erroneously considered unsubstantiated, prejudicial facts in arriving at its sentence.
 {¶ 27} Without a charge, there is nothing on which one can predicate a defendant's guilt. When the court expressed its belief as to appellant's guilt on a dismissed charge, it demonstrated a tacit bias towards appellant. Such a bias suggests the court may have improperly relied on its tendentious conclusion when it sentenced appellant to the maximum sentence. Therefore, it is our belief that appellant's sentence was contrary to law.
 {¶ 28} For the foregoing reasons, appellant's assignment of error has merit and this case is hereby reversed and remanded to the Lake County Court of Common Pleas for re-sentencing.
DONALD R. FORD, P.J., and WILLIAM M. O'NEILL, J., concur.
ROBERT A. NADER, J., retired, of the Eleventh Appellate District, sitting by assignment.
[1] Although this case was decided some five years before Senate Bill 2, it has neither been overruled nor undermines any provision of Ohio's statutory sentencing scheme.