DECISION.
{¶ 1} Following a jury trial, defendant-appellant Tyrone James was found guilty of two counts of murder and one count of felonious assault with firearm specifications. The trial court ultimately imposed a prison term of twenty-six years to life. Bringing forth five assignments of error, James appeals his convictions and the imposition of his sentence. We affirm.
 {¶ 2} On the afternoon of January 6, 2003, Janeen Roseberry was shot and killed. Her boyfriend, Anthony Rogers, was driving her home when a bullet shattered his driver's-side window, passed through his sweatshirt, and hit Roseberry. Roseberry's baby was in the backseat of the car. Rogers told police that the shooter was Tyrone James. The police arrested James.
 {¶ 3} James gave a taped statement to police. He admitted to firing a gun at the car occupied by Rogers and Roseberry when they had stopped at an intersection, but only after he saw Rogers roll down the window and point a gun at him. According to police testimony, however, Rogers's window was rolled up when his car was fired upon, because there was shattered glass remaining at the top of the window track. James also stated that he had purchased a gun to defend himself because he had heard Rogers was "looking for him." He stated that four days before the shooting incident Rogers had robbed him at gunpoint, trying to shoot him. (The record before us loosely implies that Rogers and James were both drug dealers who allegedly were fighting over "turf.") At trial, Reco Smith, a friend of James, testified that Rogers had tried to rob and shoot James on January 2, 2003.
 {¶ 4} At trial, Rogers denied pointing a gun at James on the day of the shooting. Rogers testified that after James had fired at his car, he had rushed Roseberry and her baby to the West End Clinic for medical care. After carrying them into the clinic, Rogers then left to purchase a gun "to get revenge." But he thought better of seeking out James and instead returned to the clinic, where he talked with police. When police officers asked Rogers where his car was located, he refused to tell them. The police eventually located the car and found a gun under the driver's seat. Rogers explained that the firearm the police had found was the gun he had purchased after he had left Roseberry at the clinic.
 {¶ 5} Tracey Cassel, an employee at the Hamilton County Coroner's laboratory, testified that there was gunshot residue on Rogers's hands. Cassel testified that a person could get this residue on his hands by touching someone who had been shot, by firing a gun, or simply by holding a gun that had been fired.
 {¶ 6} Kenny Eubanks was at the intersection "hanging out" with James when the shooting occurred. He testified that Rogers pointed a gun towards James and the three other people standing around him. Eubanks said he ran away when he saw the gun. He testified that he heard several shots but did not know who had fired them.
 {¶ 7} In James's statement, he said that after he had fired his gun at Rogers, Rogers pulled through the intersection, got out of the car, and fired several shots at James. James said that he then ran up the street after Rogers, firing two more shots. Emma Sue Long was working at a convenience store located at the intersection where the shooting occurred. She testified that she saw James running up the street with a gun in the air. James stated that he threw his gun into the Ohio River after hearing that Roseberry had been killed.
 {¶ 8} At trial, James attempted to introduce a statement made by Ramon Lyons, in the presence of James's mother, that other people besides James had responded with gunfire when Rogers allegedly rolled down his window and pointed a gun towards James. Prior to the trial, Lyons was killed by "random violence" and, thus, was unavailable to testify. The trial court excluded Lyons's statement, concluding that it was inadmissible hearsay.
 {¶ 9} After considering all the testimony presented at trial, the jury found James guilty of killing Roseberry and feloniously assaulting Rogers.
 {¶ 10} In his first assignment of error, James now contends that the trial court erred "in excluding the out-of-court statement of a key witness made to James's attorney, in the presence of his mother and step-father, in which [Ramon Lyons] admitted that he, along with others, was also shooting firearms at the vehicle containing Rogers and Janeen Roseberry." James contends that Lyons's statement was admissible under the Evid.R. 804(B)(3) exception to the hearsay rule because the statement was against his penal interest.
 {¶ 11} Evid.R. 804(B) provides that "[t]he following are not excluded by the hearsay rule if the declarant is unavailable as a witness: * * * (3) Statement Against Interest. A statement that * * * at the time of its making * * * so far tended to subject the declarant to civil or criminal liability * * * that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability * * * is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." The decision whether to admit the hearsay statement of an unavailable declarant pursuant to Evid.R. 804(B)(3) lies within the trial court's sound discretion.[1]
 {¶ 12} The trial court found that Lyons was unavailable to testify but excluded his statement because it was not against his penal interest. We agree with the trial court's analysis.
 {¶ 13} Initially, James's attorney sought a pretrial ruling that Lyons's statement would be admissible at trial. At that preliminary hearing, James's counsel stated that James's mother and stepfather had brought Lyons to his office. James's counsel proffered that James's mother would testify that Lyons had stated that he had been with James the day of the shooting and that there were several people, besides James, who had produced handguns and aimed them, if not fired them, in the direction of Rogers's car. But James's counsel stated that Lyons never actually said that he was one of those people who had fired at Rogers, and James's counsel never asked Lyons if he had fired a gun or even possessed a gun. At trial, James's counsel renewed the request to admit Lyons's statement. He proffered that James's mother would testify that Lyons had stated that he had seen Rogers roll down his window and display a firearm. She would also testify that Lyons had a firearm with him and that several people had shot at Rogers.
 {¶ 14} Based on the proffered testimony, we cannot say that the trial court abused its discretion in determining that this was inadmissible hearsay because the statement was not against Lyons's penal interest. Lyons never admitted that he had fired a gun at Rogers. If he had, then he could have been subject to criminal liability for felonious assault. Under the circumstances, the only thing that Lyons may have been guilty of was being in possession of a firearm, but even that is not clear from the conflicting proffered testimony. Because Lyons's statement was not against his penal interest, the trial court did not abuse its discretion in excluding the statement. The first assignment of error is overruled.
 {¶ 15} In his second assignment of error, James essentially argues that prosecutorial misconduct during the questioning of Rogers violated his due-process rights and denied him a fair trial. Specifically, James maintains that the prosecuting attorney improperly used leading questions to elicit Rogers's direct testimony.
 {¶ 16} The relevant inquiry for a claim of prosecutorial misconduct is whether the prosecutor's conduct was indeed improper, and if so, whether a substantial right of the accused was adversely affected.[2] Improper conduct by the prosecutor does not give rise to prejudicial error unless the conduct deprives the defendant of a fair trial.[3]
 {¶ 17} During Rogers's direct testimony, the prosecutor did suggest, through leading questions, the type of car that Rogers had been driving at the time of the shooting, and that Rogers and James had had a "run-in" prior to the day of the shooting. While it was improper for the prosecutor to ask leading questions during direct examination of a witness, we hold that James suffered no prejudice from this conduct because other witnesses corroborated Rogers's answers. Smith, a defense witness, testified that James had indeed had a conflict with Rogers prior to the shooting, and the testimony of investigating police officers demonstrated the type of car Rogers had been driving the day Roseberry was shot.
 {¶ 18} James also notes that the prosecutor elicited testimony from Rogers concerning how Rogers had come to have gunshot residue on his hands. The prosecutor suggested that it was because one could get gunshot residue on one's hands by touching someone who had been shot. Again, while these leading questions were improper, we hold that this conduct did not prejudice James, because Cassel, an employee of the Hamilton County Coroner's office, also testified that a person could get gunshot residue on his hands by touching someone who had been shot. Because James suffered no prejudice from the prosecutor's improper conduct, the second assignment of error is overruled.
 {¶ 19} In his third and fourth assignments of error, James contests the sufficiency and the weight of the evidence supporting his convictions. In reviewing a sufficiency-of-the-evidence claim, an appellate court must examine the evidence presented at trial and determine whether the evidence, viewed in a light most favorable to the state, could have convinced any rational trier of fact that the defendant was guilty beyond a reasonable doubt.[4] When reviewing a weight-of-the-evidence question, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[5]
 {¶ 20} James was found guilty of two counts of murder in violation of R.C. 2903.02(A) and (B), which provide that "[n]o person shall purposely cause the death of another * * *" and that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." Based on the evidence presented at trial, we hold that there was sufficient evidence to convict James of murder. He admitted in his taped statement that he had purposely fired shots at Rogers's car, one of which had struck and killed Roseberry. Roseberry was killed because James was trying to shoot Rogers. Additionally, there was sufficient evidence to convict James of felonious assault. R.C. 2903.11(A)(2) provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * *." Again, Rogers admitted that he had fired a gun at Rogers while he was in his car.
 {¶ 21} We also hold that James's convictions are not against the manifest weight of the evidence. James asserted self-defense at trial, but we can find no error in the jury's finding that James was not acting in self-defense. James admitted in his taped statement that he ran up the street after Rogers, firing two more shots, even though he had a chance to escape, as his friend Eubanks had done. Further, since James admitted that he had fired at Rogers's car and did not indicate that anyone else had shot at the car, we cannot find fault with the jury's finding that James had fired the bullet that killed Roseberry. Accordingly, the third and fourth assignments of error are overruled.
 {¶ 22} In his final assignment of error, James contends that the trial court erred in sentencing him to the maximum prison term for felonious assault and making that term consecutive to the prison term imposed for his murder conviction.
 {¶ 23} At sentencing, the trial court merged the murder offenses and imposed the statutory prison term of fifteen years to life, merged the gun specifications and imposed a three-year prison term, and imposed the maximum prison term, eight years, for the felonious-assault conviction. These sentences were to be served consecutively for an aggregate sentence of twenty-six years to life in prison.
 {¶ 24} To impose a maximum sentence upon one who is not a major drug offender or a repeat violent offender, a trial court must find that the felon either committed one of the "worst forms of the offense" or posed the greatest likelihood of recidivism.[6] To impose consecutive sentences under R.C.2929.14(E)(4), the trial court must find that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct or to the danger the offender poses to the public." The court must also find one of the following: (1) when the offender committed the offenses, he was awaiting trial or sentencing or was under post-release control; (2) the harm caused was so great or unusual that no single prison term would adequately reflect the offender's conduct; or (3) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.[7] A trial court imposing maximum, consecutive sentences must make the required findings and specify on the record its reasons supporting those findings.[8]
 {¶ 25} Here, the trial court made the required findings to support the imposition of maximum, consecutive sentences. The trial court indicated on the felony-sentencing worksheet and at the sentencing hearing, as required by State v. Comer,[9]
that James had the greatest likelihood of committing future crimes because of his criminal history and his disregard for the innocent victims in the car that he had fired upon. The court noted that James had a significant criminal history as a juvenile — 44 adjudications — that included four assaults, menacing, aggravated menacing, sexual imposition, theft, breaking and entering with an elderly victim, drug possession, vandalism, aggravated trespassing, criminal trespassing, falsification and twenty violations of court orders. Because the trial court made the required findings and gave reasons for those findings on the record, it did not err in imposing the maximum prison term for the felonious-assault conviction and making it consecutive to the prison term for the murder conviction. The final assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Hildebrandt, P.J., Gorman and Sundermann, JJ.
[1] State v. Patterson (1996), 110 Ohio App.3d 264,673 N.E.2d 1001.
[2] See State v. Cornwell, 86 Ohio St.3d 560, 570,1999-Ohio-125, 715 N.E.2d 1144, citing State v. Smith (1984),14 Ohio St.3d 13, 14, 470 N.E.2d 883.
[3] See State v. Keenan (1993), 66 Ohio St.3d 402, 405,613 N.E.2d 203.
[4] See State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
[5] See State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[6]R.C. 2929.14(C).
[7] R.C. 2929.14(E)(4)(a) through (c).
[8] R.C. 2929.19(B)(2)(d); State v. Edmondson,86 Ohio St.3d 324, 1999-Ohio-110, 715 N.E.2d 131.
[9] 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, paragraph one of the syllabus.