OPINION
{¶ 1} In this consolidated appeal,[1]
defendant-appellant, Timothy Daniel, appeals from a judgment of the Franklin County Court of Common Pleas that convicted him of having a weapon while under disability. For the following reasons, we affirm the judgment of the common pleas court.
 {¶ 2} According to the state, on or about September 19, 2004, defendant used a firearm to purposely cause the death of Luke Morbitzer. By indictment, defendant was charged with one count of murder with two firearm specifications, one count of carrying a concealed weapon, and one count of having a weapon while under disability. Defendant pled not guilty to the charges contained in the indictment.
 {¶ 3} Before the jury was sworn, defendant sought to waive a jury trial as to the charge of having a weapon under disability, and the state did not oppose this request. After the trial court granted defendant's request, the count of having a weapon while under disability was tried by the court. The remaining counts of the indictment were tried by a jury. During the trial, after having become dissatisfied with trial counsel, defendant dismissed his attorney and later proceeded pro se.
 {¶ 4} By jury verdict, defendant was found not guilty of murder and not guilty of carrying a concealed weapon. The trial court, however, did find defendant guilty of having a weapon while under disability. The court imposed a five-year prison sentence and ordered defendant to pay court costs.
 {¶ 5} From the trial court's judgment, defendant appeals. Defendant assigns seven errors for our consideration:
I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN IMPOSING THE MAXIMUM FIVE-YEAR SENTENCE FOR THE OFFENSE OF HAVING A WEAPON UNDER DISABILITY.
II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN ITS SENTENCING DETERMINATION RELIED ON FACTUAL FINDINGS NEITHER FOUND BY A JURY NOR ADMITTED BY THE APPELLANT .
III. THE TRIAL COURT ERRED BY IMPOSING A NONMINIMUM SENTENCE WITHOUT SPECIFICALLY FINDING THE FACTORS SET FORTH IN O.R.C.2929.14(B).
IV. THE TRIAL COURT ERRED IN IMPOSING A FIVE-YEAR TERM OF INCARCERATION WITHOUT PROPERLY CONSIDERING THE PURPOSES OF FELONY SENTENCING PURSUANT TO O.R.C. 2929.11 AND 2929.12.
V. THE TRIAL COURT ERRED AND THEREBY DEPRIVED THE APPELLANT, TIMOTHY DANIEL, APPEARING PRO SE, OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION, AS THE PROSECUTION FAILED TO OFFER SUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT THAT MR. DANIEL COMMITTED THE OFFENSE OF HAVING A WEAPON UNDER DISABILITY.
VI. THE TRIAL COURT ERRED AND THEREBY DEPRIVED THE APPELLANT, TIMOTHY DANIEL, OF DUE PROCESS OF LAW AS GUARANTEED BY THEFOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION, BY FINDING MR. DANIEL GUILTY, AS THE VERDICT FOR THE OFFENSE OF HAVING A WEAPON UNDER DISABILITY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
VII. THE TRIAL COURT LACKED JURISDICTION TO TRY THE DEFENDANT WITHOUT A JURY ON THE WEAPON UNDER DISABILITY CHARGE.
 {¶ 6} Defendant's seventh assignment of error asserts that the trial court lacked jurisdiction when it found defendant guilty of having a weapon while under disability. Because this assignment of error challenges the authority of the trial court to adjudicate the merits of this charge against defendant, we shall begin by addressing this claim of error.
 {¶ 7} "Jurisdiction has been described as `a word of many, too many, meanings.'" Pratts v. Hurley, 102 Ohio St.3d 81,2004-Ohio-1980, at ¶ 33, quoting United States v. Vannes
(C.A.D.C. 1996), 85 F.3d 661, 663, fn. 2. A distinction exists between a court that lacks subject-matter jurisdiction over a case and a court that improperly exercises subject-matter jurisdiction once conferred upon it. Pratts, at ¶ 10.
 {¶ 8} "`Jurisdiction' means `the courts' statutory or constitutional power to adjudicate the case.'" Pratts, at ¶ 11, quoting Steel Co. v. Citizens for a Better Environment (1998),523 U.S. 83, 89, 118 S.Ct. 1003 (emphasis omitted); Morrison v.Steiner (1972), 32 Ohio St.2d 86, 87, paragraph one of the syllabus. "Jurisdiction" encompasses both subject-matter jurisdiction and personal jurisdiction. Pratts, at ¶ 11, citingState v. Parker, 95 Ohio St.3d 524, 2002-Ohio-2833, at ¶ 22
(Cook, J., dissenting), reconsideration denied,96 Ohio St.3d 1489, 2002-Ohio-4478.
 {¶ 9} "Because subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case, it can never be waived and may be challenged at any time." Pratts, at ¶ 11, citing United States v. Cotton (2002), 535 U.S. 625, 630,122 S.Ct. 1781; State ex rel. Tubbs Jones v. Suster (1998),84 Ohio St.3d 70, 75, reconsideration denied (1999), 84 Ohio St.3d 1475. Jurisdiction "is a `condition precedent to the court's ability to hear the case. If a court acts without jurisdiction, then any proclamation by that court is void.'" Pratts, at ¶ 11, quotingTubbs Jones, supra, at 75; Patton v. Diemer (1988),35 Ohio St.3d 68, paragraph three of the syllabus.
 {¶ 10} However, the term "jurisdiction" may also be used to refer to a court's exercise of its jurisdiction over a particular case. Pratts, at ¶ 12. In Pratts, the court explained:
* * * "`The third category of jurisdiction [i.e., jurisdiction over the particular case] encompasses the trial court's authority to determine a specific case within that class of cases that is within its subject matter jurisdiction. It is only when the trial court lacks subject matter jurisdiction that its judgment is void; lack of jurisdiction over the particular case merely renders the judgment voidable.'" [State v.] Parker,
[95 Ohio St.3d 524, 2002-Ohio-2833], at ¶ 22 (Cook, J., dissenting) quoting [State v.] Swiger [(1998)], 125 Ohio App.3d [456], at 462. "Once a tribunal has jurisdiction over both the subject matter of an action and the parties to it, `* * * the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred * * *.'" State ex rel. Pizza v. Rayford (1992),62 Ohio St.3d 382, 384, 582 N.E.2d 992, quoting Sheldon's Lessee v.Newton (1854), 3 Ohio St. 494, 499.
Id.
 {¶ 11} R.C. 2931.03 provides, in part, that "[t]he court of common pleas has original jurisdiction of all crimes and offenses, except in cases of minor offenses the exclusive jurisdiction of which is vested in courts inferior to the court of common pleas." See, also, Section 4(B), Article IV, Ohio Constitution (providing that "[t]he courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law").
 {¶ 12} Here, defendant does not assert that this case was improperly filed in the common pleas court. Thus, defendant does not appear to challenge the common pleas court's statutory or constitutional power to adjudicate the case against defendant.
 {¶ 13} Rather, defendant challenges the common pleas court's exercise of subject-matter jurisdiction. Specifically, defendant asserts: (1) the common pleas court failed to adequately determine whether defendant knowingly, intelligently, and voluntarily waived his right to a jury trial as to the charge of having a weapon while under disability; and (2) the record contains insufficient evidence to show that defendant knowingly, intelligently, and voluntarily waived his right to trial by jury as to the charge of having a weapon while under disability.
 {¶ 14} "A jury waiver must be voluntary, knowing, and intelligent." State v. Bays (1999), 87 Ohio St.3d 15, 19, certiorari denied (2000), 529 U.S. 1090, 120 S.Ct. 1727, citingState v. Ruppert (1978), 54 Ohio St.2d 263, 271, certiorari denied, 439 U.S. 954, 99 S.Ct. 352. Although waiver may not presumed from a silent record, Bays, at 19, "if the record shows a jury waiver, the verdict will not be set aside except on a plain showing that the waiver was not freely and intelligently made." Id., citing Adams v. United States ex rel. McCann
(1942), 317 U.S. 269, 281, 63 S.Ct. 236.
 {¶ 15} In State v. Jells (1990), 53 Ohio St.3d 22, certiorari denied (1991), 498 U.S. 1111, 111 S.Ct. 1020, the Supreme Court of Ohio stated that "[w]hile it may be better practice for the trial judge to enumerate all the possible implications of a waiver of a jury, there is no error in failing to do so." Id. at 26; see, also, State v. Thomas,97 Ohio St.3d 309, 2002-Ohio-6624, at ¶ 26, certiorari denied (2003),539 U.S. 916, 123 S.Ct. 2295. Construing and applying Crim.R. 23(A) and R.C. 2945.05, the Jells court therefore held that "[t]here is no requirement for a trial court to interrogate a defendant in order to determine whether he or she is fully apprised of the right to a jury trial." Id. at paragraph one of the syllabus. InThomas, the Supreme Court of Ohio later held that under the constitution there is no requirement for a trial court to make specific inquiries of defendant. Id. at ¶ 27.
 {¶ 16} Here, absent objection by the state, defense counsel informed the trial court that defendant wanted to waive a jury trial as to the charge of having a weapon under disability. Thereafter, the court and defendant had this exchange:
THE COURT: Mr. Daniel, I also have to advise you with respect to your right to a trial by jury.
You do have a right to have a trial by jury on all counts and that right is guaranteed to you by the United States Constitution, the Constitution of the State of Ohio. Do you wish at this point in time then to waive your right to a trial by jury with respect to Count Three, the weapons under disability?
THE DEFENDANT: Yes, Your Honor.
THE COURT: All right.
(Tr. Vol. I, 4.)[2]
 {¶ 17} Although it may have been better practice for the trial court to enumerate all the possible implications of a waiver of a jury, there is no error in failing to do so. Jells,
at 26. Because Jells and Thomas hold that no inquiry is required, the trial court's failure to make specific inquiries of defendant cannot be error. See, e.g., State v. Filiaggi (1999),86 Ohio St.3d 230, 238, certiorari denied (2000), 538 U.S. 1090,120 S.Ct. 821.
 {¶ 18} R.C. 2945.05 provides, in part:
In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made by part of the record thereof. * * *
Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of trial.
 {¶ 19} In State v. Pless (1996), 74 Ohio St.3d 333, reconsideration denied, 75 Ohio St.3d 1413, the Supreme Court of Ohio held:
In a criminal case where the defendant elects to waive the right to trial by jury, R.C. 2945.05 mandates that the waiver must be in writing, signed by the defendant, filed in the criminal action and made part of the record thereof. Absent strict compliance with the requirements of R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury.
Id. at paragraph one of the syllabus. "The requirement that a jury waiver form be `"filed in said cause and made a part of the record thereof" means that the form must be time-stamped and included in the record.'" Thomas, supra, at ¶ 29, quotingState v. Gipson (1998), 80 Ohio St.3d 626, 632; but, see,Thomas, at ¶ 29, citing State v. Otte (2002),94 Ohio St.3d 167, 169 ("jurisdiction to hold a bench trial where jury waiver was physically located in the case file but had not been file-stamped").
 {¶ 20} "[A] written waiver is presumptively voluntary, knowing, and intelligent." Bays, supra, at 19, citing UnitedStates v. Sammons (C.A.6, 1990), 918 F.2d 592, 597. Here, the record contains defendant's written waiver of a jury trial. Defendant does not dispute that this written waiver was properly executed. Accordingly, under Bays, the written waiver in this case is presumptively voluntary, knowing, and intelligent.
 {¶ 21} Based upon our review, we cannot conclude that defendant has demonstrated a plain showing that his waiver of a jury trial with respect to the charge of having a weapon under disability was not voluntarily, knowingly, and intelligently made. Accordingly, we overrule defendant's seventh assignment of error.
 {¶ 22} Having determined that the trial court properly exercised subject-matter jurisdiction, we shall now consider defendant's remaining assignments of error.
 {¶ 23} Defendant's first assignment of error asserts the trial court's imposition of the maximum five-year sentence for the conviction of having a weapon while under disability constitutes prejudicial error.
 {¶ 24} Defendant asserts that the trial court erred when it stated:
THE COURT: Mr. Daniel, as you are well aware and as I'm well aware, I have looked at your prior record for purpose of sentencing and you have been convicted on a prior occasion of the offense of burglary. You've also been convicted in other states of other offenses. I'm also going to make the comment, because I must, I'm going to find based upon our statutory criteria you're the worse [sic] form offender posing the greatest likelihood of committing future crime.
The worse [sic] form offender are those offenders that have a weapon under disability. I am making my own personal finding on the date and time in question you did commit murder, that's why I'm making you and finding you the worse [sic] form offender that poses the greatest likelihood of committing future crime.
You're going to be sentenced to the maximum of five years in the state penitentiary.
(Tr. Vol. II, 451.)[3]
 {¶ 25} Defendant contends that by injecting its own belief that defendant committed murder, the trial court improperly invaded the province of the jury, which found defendant not guilty of murder. Defendant further contends that the trial court failed to adequately explain how defendant posed the greatest likelihood of committing future crimes.
 {¶ 26} The state argues that the trial court, as the independent trier of fact as to whether defendant had a weapon while under disability, was not required to ignore evidence concerning whether defendant committed murder. Furthermore, the state argues that because of the trial court's function as the entity charged with sentencing, the court had an independent prerogative to reach its own conclusions concerning defendant's use of a firearm.
 {¶ 27} Although defendant challenges the adequacy of the trial court's sentencing explanation, we find that the court did in part support its finding that defendant posed the greatest likelihood of committing future crimes and that defendant was the worst form of an offender by referencing defendant's history of prior convictions. Furthermore, after defendant was sentenced in this case, R.C. 2929.14(C) has been found unconstitutional. That statute required a court to find, among other things, that a defendant committed the worst form of an offense and the offender posed the greatest likelihood of committing future crimes before it imposed a maximum sentence. State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, paragraph one of the syllabus, reconsideration denied, 109 Ohio St.3d 1408, 2006-Ohio-1703; see, also, id. at paragraph seven of the syllabus (holding that a trial court has full discretion to impose a prison sentence within the statutory range and is no longer required to make findings or give its reasons for imposing maximum, consecutive, or more than a minimum sentence); State v. Mathis, 109 Ohio St.3d 54, 2006-Ohio-855, at paragraph three of the syllabus, reconsideration denied,109 Ohio St.3d 1427, 2006-Ohio-1967. Accordingly, defendant's claim that the trial court failed to adequately explain its sentence, thereby constituting prejudicial error, is not convincing.
 {¶ 28} Furthermore, we do not agree with defendant's claim that the trial court's statements about defendant's culpability as to the murder charge improperly invaded the province of the jury.
 {¶ 29} Under R.C. 2901.05(A), "[e]very person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution." See, also, R.C. 2901.05(D) (defining "reasonable doubt").[4] However, for purposes of sentencing, proof by a preponderance of the evidence is required.State v. Zweibel (Aug. 29, 2000), Franklin App. No. 00AP-61, dismissed appeal not allowed (2001), 91 Ohio St.3d 1416, citingState v. Casalicchio (1991), 58 Ohio St.3d 178, 181, rehearing denied, 60 Ohio St.3d 705. See, also, State v. Stumpf (1987),32 Ohio St.3d 95, 102, certiorari denied (1988), 484 U.S. 1079,108 S.Ct. 1060, rehearing denied (1988), 485 U.S. 1015,108 S.Ct. 1492 (defining "proof by a preponderance of the evidence").[5]
 {¶ 30} Thus, even though the jury found that the state failed to prove beyond a reasonable doubt that defendant committed murder and that defendant carried a concealed weapon as alleged in the indictment, because a different burden of proof is required for sentencing purposes, the trial court was still free to reach a contrary conclusion for purpose of sentencing.Zweibel, supra.
 {¶ 31} Additionally, notwithstanding this court's divergent judicial antecedents, recent case authority supports our conclusion that the trial court's statements about defendant's culpability as to the murder charge do not constitute reversible error.
 {¶ 32} In Columbus v. Jones (1987), 39 Ohio App.3d 87, the appellant, Howard E. Jones, was charged with (1) operating a motor vehicle while under the influence of alcohol and (2) operating a motor vehicle without a valid license. By jury verdict, Jones was acquitted of operating a motor vehicle while under the influence of alcohol; however, Jones was found guilty of operating a motor vehicle without a valid license. Following Jones's conviction, the trial court ordered him, among other things, to attend an alcohol treatment program. Considering whether the sentence in that case was excessive, the Jones
court stated that "* * * it constitutes an abuse of discretion for a trial court to impose a more severe sentence for a lesser charge of which the defendant was convicted because of the trial court's belief that the jury was mistaken in finding the defendant not guilty of a more serious offense." Id. at 89-90. The Jones court further instructed: "The trial court is required to accept the jury's verdict and, in sentencing for an offense of which the defendant was convicted, to give no consideration to the evidence tending to indicate defendant to be guilty of the offense of which he was found not guilty by the jury." Id. at 90. See, also, State v. Lockhart (Aug. 7, 2001), Franklin App. No. 00AP-1138 (construing Jones).
 {¶ 33} In State v. Patterson (1996), 110 Ohio App.3d 264, dismissed, appeal and cross-appeal not allowed,76 Ohio St.3d 1493, relying on Jones and stating that it was not persuaded to deviate from the law announced in Jones, this court agreed with the appellant's contention that a trial court erred by considering a murder for which appellant was acquitted when it sentenced the appellant for a conviction of attempted murder with a firearm specification. The Patterson court concluded that "a trial court abuses its discretion in sentencing a defendant, even when the sentence imposed is within the statutory guidelines, if the trial court has considered evidence concerning the acquitted charge." Id. at 271. See, also, Lockhart (construingPatterson).
 {¶ 34} Subsequent to Jones and Patterson, this court rendered State v. Epley (Aug. 25, 1998), Franklin App. No. 97APA11-1467 in which the law announced in that case diverged from Jones and Patterson. See, e.g., Lockhart (wherein this court "recognize[d] that our decision in Epley diverges from our decision in Patterson and Jones").
 {¶ 35} In Epley, the appellant, Leon W. Epley, was charged with crimes against two victims, Valeriy Iskhakov, and Jeffrey Sabota. Both victims were robbed while working as delivery drivers. By jury verdict, Epley was found guilty of theft as to Sabota; however, the jury found that Epley was not guilty of aggravated robbery and kidnapping. The jury further found that Epley did not have a firearm on or about his person or under his control during the offense against Sabota. The jury did, however, find that Epley either displayed, brandished, used, or indicated that he possessed a weapon. Regarding the charges involving the robbery of Iskhakov, the jury deadlocked and a mistrial was later declared. Later, however, Epley pled guilty to a lesser offense of theft involving Iskhakov. Filing separate judgments, the trial court imposed the maximum sentence of 18 months for each conviction, and the court ordered the sentences to be served consecutively.
 {¶ 36} Citing Jones, supra, Epley asserted that the trial court erred by considering evidence that a firearm was used during the commission of the crimes because he was found not guilty of aggravated robbery. Relying on United States v. Watts
(1997), 519 U.S. 148, 117 S.Ct. 633, rehearing denied,519 U.S. 1144, 117 S.Ct. 1024, the Epley court concluded that the trial court did not abuse its discretion by imposing the maximum allowable sentence. The Epley court noted that "`a sentencing judge may take into account facts introduced at trial relating to other charges, even one of which the defendant has been acquitted.'" Id. quoting Watts, at 148, quoting United Statesv. Donelson (C.A.D.C. 1982), 695 F.2d 583, 590. But, see, Statev. Henley (Oct. 29, 1998), Cuyahoga App. No. 74305 (criticizingEpley; stating a belief that Watts does not overrule Jones,
supra; and stating that "while Watts may overrule Ohio case law with respect to federal constitutional issues, it does not overrule rulings interpreting Ohio sentencing law"); State v.Goodman (Jan. 26, 1998), Stark App. No. 1997CA00171, appeal not allowed, 82 Ohio St.3d 1415 (distinguishing Watts, supra, by noting that federal sentencing guidelines differ from Ohio sentencing guidelines); State v. Anderson (1999),135 Ohio App.3d 759 (Walters, J., concurring separately), dismissed, appeal not allowed (2000), 88 Ohio St.3d 1434.
 {¶ 37} Epley is consistent with the decision reached by the Supreme Court of Ohio in State v. Wiles (1991),59 Ohio St.3d 71, certiorari denied (1992), 506 U.S. 832, 113 S.Ct. 99. See, e.g., State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 33 (observing that Epley follows Wiles).
 {¶ 38} In Wiles, the appellant, Mark W. Wiles, was charged with one count of aggravated murder with two specifications and two counts of aggravated burglary. A three-judge panel found Wiles guilty of aggravated murder and guilty of one count of aggravated burglary and the specifications relative thereto. On appeal, Wiles contended, among other things, that, while a 1983 burglary charge was dismissed by the three-judge panel, evidence relevant thereto was improperly considered by the court in its sentencing determination.
 {¶ 39} Finding that the objectionable reference arguably encompassed the 1983 burglary, the Wiles court stated that consideration of evidence as to the 1983 burglary charge at the sentencing stage did not constitute reversible error. Id. at 78. Overruling Wiles's proposition of law, the Wiles court stated: "`It is well established that a sentencing judge may take into account facts introduced at trial relating to other charges, even one of which the defendant has been acquitted.'" Id. at 78, quoting Donelson, supra, at 590.
 {¶ 40} Accordingly, following Epley, a more recent judicial pronouncement of this court than either Jones or Patterson,
and finding that Epley is consistent with the Supreme Court of Ohio's decision in Wiles, we conclude that given the trial court's role as fact finder at the trial, the trial court's statements at sentencing regarding its belief that defendant committed murder, does not constitute reversible error.
 {¶ 41} For the foregoing reasons, we therefore overrule defendant's first assignment of error.
 {¶ 42} In his second assignment of error, relying in part upon Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, rehearing denied 542 U.S. 961, 125 S.Ct. 21, and UnitedStates v. Booker (2005), 543 U.S. 220, 125 S.Ct. 738, defendant asserts that the trial court erred by sentencing defendant based on factual findings neither found by a jury nor admitted by defendant. See, e.g., Blakely, at 304 (stating that "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts `which the law makes essential to the punishment,' * * * and the judge exceeds his proper authority"); see, also, Foster, at ¶ 7 (construingBlakely and stating that "aside from the exception for prior criminal convictions and the defendant's consent to judicial fact-finding, the Sixth Amendment prohibits a judge from imposing a sentence greater than that allowed by the jury verdict or by the defendant's admissions at a plea hearing"). (Footnote omitted.) Cf. Washington v. Recuenco (2006), ___ U.S. ___,126 S.Ct. 2546, 2553 (finding that "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error").
 {¶ 43} Recently, in State v. Draughon, Franklin App. No. 05AP-860, 2006-Ohio-2445, this court "[held] that a Blakely
challenge is waived by a defendant sentenced after Blakely if it was not raised in the trial court." Id. at ¶ 8. Here, defendant was sentenced after Blakely was rendered and, thus, he could have objected to his sentencing based upon Blakely and the constitutionality of Ohio's sentencing scheme. However, defendant failed to assert a Blakely challenge in the trial court, and, thus, we find that defendant waived his Blakely
challenge and this court will not sua sponte address it.Draughon, at ¶ 8. We therefore overrule defendant's second assignment of error.
 {¶ 44} By his third assignment of error, defendant asserts that the trial court erred by imposing a non-minimum sentence without specifically finding the factors set forth in R.C.2929.14(B).
 {¶ 45} In Foster, supra, the Supreme Court of Ohio held that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id., at paragraph seven of the syllabus; see, also, Mathis, supra, at paragraph three of the syllabus.
 {¶ 46} Recently, in State v. Knopf, Franklin App. No. 05AP-1201, 2006-Ohio-3806, this court stated:
After Foster, trial courts now have full discretion to impose a prior sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences.Foster, at ¶ 100; Draughon, at ¶ 9. If we remanded this matter for resentencing, we would instruct the trial court to do what it already did: sentence appellant within the statutory range without making factual findings or providing any reasons for its sentence. We decline to remand this case for such a futile act.
Id. at ¶ 11.
 {¶ 47} Here, even assuming arguendo that the trial court failed to make findings under R.C. 2929.14(B), if we were to remand this matter, we would instruct the trial court to do what it already purportedly did: sentence defendant within the statutory range without making factual findings.
 {¶ 48} Accordingly, applying Knopf, we overrule defendant's third assignment of error.
 {¶ 49} By his fourth assignment of error, defendant asserts that the trial court erred by imposing a five-year sentence without properly considering the purposes of felony sentencing required by R.C. 2929.11 and 2929.12.
 {¶ 50} In its judgment entry of June 1, 2005, the court stated, in part: "The Court has considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the factors set forth in R.C. 2929.12." Thus, the express language of the court's judgment entry belies defendant's claim that the trial court failed to consider the purposes of felony sentencing required by R.C. 2929.11 and 2929.12. See State v. Braxton,
Franklin App. No. 04AP-725, 2005-Ohio-2198, at ¶ 27 (stating that "a rote recitation by the trial court that it has considered applicable factors under R.C. 2929.12 is sufficient for the trial court to satisfy its duty"); see, also, State v. Sharp,
Franklin App. No. 05AP-809, 2006-Ohio-3448, at ¶ 6 (observing that a statement in a judgment entry stating that the court considered the purposes and principles of sentencing supports a conclusion that a trial court considered requisite statutory factors prior to the sentencing of the defendant); State v.Starkweather (Mar. 29, 2002), Ashtabula App. No. 2001-A-0006, appeal not allowed, 96 Ohio St.3d 1470, 2002-Ohio-3910 (stating that sentencing findings mandated by R.C. 2929.12 and 2929.14
"must appear in the judgment or somewhere on the record in the sentencing exercise").
 {¶ 51} Accordingly, defendant's fourth assignment of error is overruled.
 {¶ 52} By his fifth and sixth assignments of error, defendant asserts his conviction for having a weapon while under disability is supported by insufficient evidence and is against the manifest weight of the evidence. Because these assignments of error are interrelated, we shall address them jointly.
 {¶ 53} When an appellant challenges his or her conviction as not supported by sufficient evidence, an appellate court construes the evidence in favor of the prosecution and determines whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by constitutional amendment on other grounds in State v. Smith (1997), 80 Ohio St.3d 89; State v.Thompkins (1997), 78 Ohio St.3d 380, 386, reconsideration denied, 79 Ohio St.3d 1451; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. See, also, State v. Woodward,
Franklin App. No. 03AP-398, 2004-Ohio-4418, at ¶ 16, cause dismissed, 103 Ohio St.3d 1489, 2004-Ohio-5606, reconsideration denied, 104 Ohio St.3d 1428, 2004-Ohio-6585 (observing that in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility, rather "we essentially assume the state's witnesses testified truthfully and determine if that testimony satisfies each element of the crime").
 {¶ 54} Comparatively, when presented with a manifest-weight argument, an appellate court engages in a limited weighing of the evidence to determine whether the fact finder's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt.Thompkins, at 387; Conley, supra; State v. Group,98 Ohio St.3d 248, 2002-Ohio-7247, at ¶ 77. "The question for the reviewing court [in a manifest-weight claim] is `whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'" Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, Thompkins, at 387.
 {¶ 55} R.C. 2923.13 provides, in part:
(A) Unless relieved from disability as provided in section2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
* * *
(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.
* * *
(B) Whoever violates this section is guilty of having weapons while under disability, a felony of the third degree.
See, also, R.C. 2901.22(B) (defining culpable mental state of "knowingly").[6]
 {¶ 56} R.C. 2901.01(A)(9) defines an "offense of violence" as used in the Revised Code. Division (9)(a) of R.C. 2901.01(A) outlines specific statutory crimes that constitute an "offense of violence." Under division (9)(a), a violation "of division (A)(1), (2), or (3) of section 2911.12" constitutes an "offense of violence."[7]
 {¶ 57} Here, in 1998, defendant was convicted of burglary, a violation of R.C. 2911.12, and a felony of the third degree.[8] According to R.C. 2911.12(C), effective July 1, 1996, a violation of division (A)(3) of R.C. 2911.12 constitutes a felony of the third degree. Comparatively, under R.C.2911.12(C), a violation of division (A)(1) or (2) of R.C. 2911.12
constitutes a felony of the second degree, and a violation of division (A)(4) of R.C. 2911.12 constitutes a felony of the fourth degree.[9] Thus, by implication, under the version of R.C. 2911.12 that became effective July 1, 1996, if a party is convicted of a felony of the third degree for a violation of R.C.2911.12, that party must have been found guilty of violating R.C.2911.12(A)(3).
 {¶ 58} Because according to R.C. 2911.12(C) only a violation of division (A)(3) constitutes a felony of the third degree, and because in 1998 defendant was convicted of a third degree felony as to his burglary conviction, by reasonable inference we therefore conclude that defendant's 1998 burglary conviction was based upon a violation of R.C. 2911.12(A)(3).
 {¶ 59} Under R.C. 2901.01(A)(9)(a), a violation of R.C.2911.12(A)(3) constitutes an "offense of violence." Having concluded that defendant violated R.C. 2911.12(A)(3), which resulted in his 1998 burglary conviction, we therefore also must conclude that the crime underlying defendant's 1998 conviction constitutes an "offense of violence" as statutorily defined in R.C. 2901.01(A)(9)(a).
 {¶ 60} Although we have concluded that the crime underlying defendant's 1998 felony conviction constitutes an "offense of violence" as defined in R.C. 2901.01(A)(9)(a), thereby satisfying the requirements under R.C. 2923.13(A)(2), we must still determine whether the evidence supports a finding that defendant knowingly acquired, had, carried, or used any firearm or dangerous ordnance while under disability as required by R.C.2923.13(A).
 {¶ 61} R.C. 2923.13(A) provides, in part: "Unless relieved from a disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance[.]"
 {¶ 62} Our review of the record reveals that there is no evidence that defendant was relieved from disability pursuant to R.C. 2923.14. Neither does defendant assert that he was relieved of a disability pursuant to R.C. 2923.14. Absent that evidence, the trial court therefore reasonably could conclude that defendant was under disability at the time of the events of September 19, 2004.
 {¶ 63} Furthermore, based upon our review of the evidence, we find that there is evidence to support a finding that defendant knowingly acquired, had, carried, or used a firearm or dangerous ordnance while under disability.
 {¶ 64} At trial, Ryan F. Barr, a friend of defendant and a witness of the state, testified that on the evening of September 18, 2004, he spent part of the early evening with defendant, defendant's girlfriend, and defendant's baby at defendant's apartment. (Tr. Vol. I, 74.) Barr testified that on that evening, while he was at defendant's apartment, defendant "show[ed]" a gun to Barr. (Id.) According to Barr, the gun was a .9 mm Taurus. (Id.) Barr also testified that on a different occasion he had seen defendant with the same gun (id.), and on a different occasion he had seen defendant with a different firearm, a Smith Wesson .22 caliber gun with a scope. (Id. 75-76, 105.)
 {¶ 65} At some point during the evening, at defendant's request, Barr took defendant to defendant's mother's house because defendant purportedly was on the verge of being evicted and he wanted to ask his mother if he could move in with her. (Id. 74-75.) After visiting defendant's mother, defendant and Barr later returned to defendant's apartment. (Id. 77.)
 {¶ 66} According to Barr, at approximately 10 p.m., defendant and Barr left defendant's apartment to go to some bars. (Id.) Defendant and Barr first drove by an establishment which Barr noticed "was either rundown, or closed or whatever." (Id. 78.) According to Barr, at some point defendant suggested that they go to a bar called "Outland." (Id. 79.)
 {¶ 67} After arriving at Outland, Barr went to get some drinks while defendant wandered around the establishment. (Id. 80.) Later Barr and defendant made preparations to play pool. (Id. 82.) According to Barr, at some point defendant and another person, who was later identified as Luke Morbitzer, argued and exchanged words. (Id. 84.) Barr testified:
I could hear talking and maybe just jawing back and forth from each other. And the guy, Luke, he was like, oh, it's okay, slapped Tim on the butt, you know. And that's when — I don't know if they was [sic] Luke's friends or anything. They all started laughing and Luke was laughing also.
(Id.)
 {¶ 68} According to Barr, after Morbitzer slapped defendant's butt, defendant stared at Morbitzer without saying anything further and defendant looked "kind of mean-faced." (Id. 84, 113.) Morbitzer later offered to buy drinks for Barr and defendant, but defendant and Barr declined Morbitzer's offer. (Id. 85.)
 {¶ 69} Barr and defendant remained at the bar until approximately 3 a.m. (Id.) According to Barr, after he and defendant separately exited the bar (Id. 85-86), Barr later located defendant, who was standing in an alley and staring into a crowd. (Id. 86-87.)
 {¶ 70} After locating defendant, Barr observed some women and he quickly walked toward them so that he could catch up with them. (Id. 88.) As Barr was walking, he recognized Luke Morbitzer, who appeared drunk and who was attempting to get into a car with another person. (Id.) At some point, Barr quickly looked behind him to search for defendant. (Id. 89.) Barr testified:
A. * * * I looked back and [defendant] was standing with hand halfway cocked up pointing at this guy.
Q. Did you notice anything in his hand?
A. Yeah. Black object.
Q. Okay. Did you recognize what the object was?
A. It looked like a gun to me.
Q. And was [sic] there any gunshots?
A. Yes.
Q. And was there one gunshot?
A. There was [sic] multiple gunshots.
* * *
Q. At that point did you know the direction that [defendant] was shooting?
A. Well, when I looked the first time, it looked like he was pointing toward the car, the passenger area.
Q. This person, the passenger, the person getting into the car, was he in the line of fire?
A. He looked like — he looked like he was in the line of fire, yes.
(Id. 89-90.)
 {¶ 71} Barr also testified that, although he did not recall seeing defendant with a gun at the bar prior to the shooting (id. 95-96), the gun that defendant fired during the early morning of September 19, 2004, "looked small and black like the one he showed me that evening." (Id. 98.)
 {¶ 72} After the shooting began, Barr ran to his car, left defendant behind, and fled. (Id. 119.) Barr stayed the night with a friend and he did not immediately contact police about the shooting. (Id. 119-120.)
 {¶ 73} Defendant's girlfriend, Gina Renee Gillfillan, also testified on behalf of the state. Gillfillan testified that, at the time of the shooting, she and defendant's infant son lived with defendant. (Id. 146, 147.) Gillfillan testified that Barr came to the couple's apartment on the evening of September 18, 2004, and later left with defendant. (Id. 148-149.) According to Gillfillan, when defendant left the apartment with Barr, defendant had a gun with him. (Id. 149.) Gillfillan also testified that, before that night, defendant also had guns. (Id.)
 {¶ 74} Gillfillan testified that in the early morning of September 19, 2004, she received a telephone call from defendant, in which defendant asked Gillfillan to pick him up from "somewhere off of High Street." (Id. 150.) Gillfillan then drove to High Street, but she did not find defendant and returned home. (Id. 151.) According to Gillfillan, defendant arrived home at approximately 4 or 4:30 a.m. (Id.) According to Gillfillan, after defendant arrived home, defendant told Gillfillan that "he had shot a man." (Id.) Gillfillan testified: "[Defendant] told me that the man was a white supremacist; and it happened at The Outland Bar, outside of Outland Bar." (Id.) When asked whether defendant told her how many times he shot Morbitzer, Gillfillan testified: "I think he told me six to seven times. He told me he unloaded the gun." (Id. 152.) When queried whether defendant informed her if Ryan Barr was with him, Gillfillan testified: "Yeah. He told me Ryan was with him when he shot the guy and Ryan left in his car and Tim left — or ran on foot." (Id.) Gillfillan testified that defendant confided to her that he disposed of the weapon after the shooting. (Id. 154.) According to Gillfillan, the following morning defendant retrieved the gun and later defendant attempted to sell the gun that he used to shoot Morbitzer to a neighbor who was named "Bill." (Id. 153-154.)
 {¶ 75} According to William McWhorter, Jr., another state's witness, in late September or early October, 2004, defendant asked him if he wanted to purchase a black .9 mm gun from defendant. (Id. 171.) According to McWhorter, at the time of defendant's offer, defendant's girlfriend, Gina Gillfillan, was also present in the room. (Id.) McWhorter declined defendant's solicitation. (Id. 172.)
 {¶ 76} Notwithstanding this evidence, defendant asserts that other evidence adduced at trial renders unreliable Gillfillan's testimony, Barr's testimony, and McWhorter's testimony. Defendant therefore reasons his conviction is supported by insufficient evidence and is against the manifest weight of the evidence. Defendant's argument is unconvincing.
 {¶ 77} In a criminal or civil case, a determination of the weight of the evidence and credibility of witnesses is primarily for the trier of facts. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. In Woodward, supra, this court explained:
* * * [T]he jury is free to believe all, part, or none of the testimony of each witness who appears before it. State v. Long
(1998), 127 Ohio App.3d 328, 335. The jury is in the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the testimony. State v. Wright,
Franklin App. No. 03AP-470, 2004-Ohio-677, at ¶ 11. Thus, a reviewing court may not second guess the jury on matters of weight and credibility. Id.
Id. at ¶ 18. See, also, Maxton Motors, Inc. v. Schindler
(Dec. 26, 1984), Defiance App. No. 4-83-23 (discussing role of the trier of fact).
 {¶ 78} Here, despite defendant's assertions to the contrary, we find the testimony of Barr, Gillfillan, and McWhorter, if believed by the trial court as the finder of fact, constitutes sufficient evidence to support a finding that defendant knowingly acquired, had, carried, or used a firearm or dangerous ordnance while under disability. Furthermore, after reviewing the evidence, we cannot conclude that the trial court, as the trier of fact, clearly lost its way and created a manifest miscarriage of justice by finding defendant guilty of having a weapon while under disability.
 {¶ 79} Accordingly, for the foregoing reasons, construing the evidence in favor of the prosecution, we hold that defendant's conviction is supported by sufficient evidence such that the evidence permits a rational trier of fact to find that defendant committed the offense of having a weapon while under disability beyond a reasonable doubt. We further hold that the trial court, as the trier of fact, did not clearly lose its way and create such a manifest miscarriage of justice such that defendant's conviction is against the manifest weight of the evidence. Therefore, we overrule defendant's fifth and sixth assignments of error.
 {¶ 80} Accordingly, having overruled all seven of defendant's assignments of error, we therefore affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Bryant and McGrath, JJ., concur.
[1] In appellate case No. 05AP-564, proceeding pro se, defendant appealed from the common pleas court's judgment in common pleas case No. 04CR-10-6745, and defendant requested a court-appointed attorney to represent him in his appeal. In appellate case No. 05AP-683, proceeding pro se, defendant filed another appeal from the judgment in common pleas case No. 04CR-10-6745. By separate journal entries, this court appointed appellate counsel for defendant and sua sponte consolidated appellate case Nos. 05AP-564 and 05AP-683.
[2] By motion filed on September 26, 2005, before the trial court, the state moved to correct and modify the record pursuant to App.R. 9(E). In its entry, the court stated in an entry filed November 17, 2005, in part:
Insofar as the State seeks correction/modification regarding the jury waiver, this Court specifically recalls that, after this Court said it would allow the waiver, the Court's bailiff retrieved a waiver form and defendant at that time signed the form at counsel table, at which point defendant's then trial counsel provided the signed waiver to this Court, which is when this Court discussed the waiver with defendant. Accordingly, the State's motion is GRANTED in that respect.
[3] By motion filed on September 26, 2005, before the trial court, the state moved to correct and modify the record pursuant to App.R. 9(E). In its entry, the court stated in its November 17, 2005 entry, in part:
Insofar as the State seeks correction/modification regarding lines 14, 17, and 21 on page 451 of the transcript, the court reporter has reviewed her notes from the hearing, and the notes are consistent with both" worse" and "worst." This Court confirms that this Court's habit is to say "worst," not "worse," in making the finding to support a maximum sentence. Accordingly, the State's motion is GRANTED in that respect.
[4] R.C. 2901.05(D) provides:
"Reasonable doubt" is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. "Proof beyond a reasonable doubt" is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs.
[5] In Stumpf, the court stated:
"The most acceptable meaning to be given the express, proof bya preponderance, seems to be proof which leads the jury to find that the existence of the contested fact is more probable thanits nonexistence. * * * [A] preponderance of the evidence means the greater weight of the evidence. * * * The greater weight may be infinitesimal, and it is only necessary that it be sufficient to destroy the equilibrium." Id. at 102.
(Citations omitted; emphasis sic.)
[6] R.C. 2901.22(B) provides:
A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
[7] Effective July 1, 1996, Am. Sub. S.B. No. 269, 146 Ohio Laws, Part VI, 10752, 10847, deleted a statutory reference to section "2911.12" and inserted "or of division (A)(1), (2), or (3) of section 2911.12" in division (I)(1).
[8] State v. Daniel, Franklin C.P. case No. 97CR-12-7027 (Judgment Entry, filed on April 15, 1998.)
[9] Prior to the 1996 amendments to R.C. 2911.12, division (C) of R.C. 2911.12 provided:
Whoever violates this section is guilty of burglary. A violation of division (A)(1) of this section is an aggravated felony of the second degree. A violation of division (A)(2) of this section is a felony of the third degree. A violation of division (A)(3) of this section is a felony of the fourth degree.