[Cite as *State v. Conley*, 2013-Ohio-4137.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2012CA00150 |
| | : | |
| SHANNON LYNN CONLEY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Stark County Court of
                                 Common Pleas, Case No. 2011CR1250

JUDGMENT:                        AFFIRMED

DATE OF JUDGMENT ENTRY:          September 3, 2013

APPEARANCES:

For Plaintiff-Appellee:                  For Defendant-Appellant:

JOHN D. FERRERO, JR.                     EUGENE O'BYRNE
STARK CO. PROSECUTOR                     101 Central Plaza South
KATHLEEN O. TATARSKY                     Canton, OH 44702
110 Central Plz. S., Ste. 510
Canton, OH 44702-1413

*Delaney, J.*

{¶1}   Appellant Shannon Lynn Conley appeals from the July 24, 2012 judgment entries of the Stark County Court of Common Pleas convicting him upon one count of attempted rape and one count of kidnapping and sentencing him to an aggregate prison term of 20 years.  Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

*The Assault from C.C.'s Perspective*

{¶2}   C.C. is a 22-year-old female who did not graduate from high school and who described herself as requiring special education classes.  On July 11, 2011, around 2:00 p.m., C.C. was on her way home on foot from Goodwill parenting classes held in the city of Canton at the corner of 9th Street and McKinley Avenue S.W.

{¶3}   As C.C. walked in the area of the 800 block of 5th Street N.W., Canton, she noticed appellant across the street, a man whom she did not know.  Appellant said "hi" to her and she said "hi" back, "to be polite."  C.C. kept walking and appellant started walking in the same direction with her; he asked her where she was coming from and she told him.  C.C. felt uncomfortable because she described appellant as "acting funny," sticking his hands in and out of his pockets.  At one point, appellant stopped to speak to someone on his cell phone and C.C. kept walking.  Appellant then said, "Come here," and she said, "No, I'm going home."  C.C. told police and later testified appellant then grabbed her from behind, picked her up, and carried her into an area she described as an alley near an apartment building.

{¶4}   C.C. said she tried to get away from appellant but she was wearing flip-flop sandals and a sandal broke during the struggle.  C.C. remembered a tree stump

and a shed near the alley where appellant brought her. Appellant told her to pull down her pants. C.C. kept telling him, "Stop, don't kill me, I have kids." Appellant pulled her pants down and told C.C. to be quiet or he would stab her.

{¶5} A woman stuck her head out of the apartment building and said "Stop that or I'm going to call the police." Appellant led C.C. to the other side of the apartment building, walking right behind her and telling her that he would stab her if she wasn't quiet. On the other side of the apartments, appellant told C.C. to get down, got on top of her, and pulled down her pants. Appellant attempted to penetrate C.C. but was not able to. He put his hands over her mouth and she pushed them away. He ejaculated onto her back; she could feel a wet spot on her blouse.

{¶6} Afterward, appellant pulled up his pants and ran away. C.C. got up and ran home, barefoot, upset, and crying. She didn't know what to do, so she called her mother, who told her to call the police. An officer came to her house and C.C. told him what happened. She turned over the clothing and underwear she had been wearing, and rode with officers to show them where the assault occurred.

*The Neighbors' Perspectives*

{¶7} This assault occurred in broad daylight, in view of an apartment building and homes. A number of people saw portions of the interaction between C.C. and appellant and later spoke to police.

{¶8} Neighbor 1 lives in an apartment in the 800 block of 5th Street N.W., Canton. He was in his kitchen fixing dinner when he heard a woman yell outside. He sat down to eat, and heard the woman yell again. This time, Neighbor 1 went to his window and looked out to see a man standing over a woman bent over the stump of a

tree; both parties had their pants down around their ankles. Neighbor 1 could not see the parties' faces but described the male as black, "bigger," bald, and wearing blue shorts. The female was white and "smaller." Neighbor 1 heard the woman yell and say she wasn't going to run anymore; he thought she appeared to be crying.

{¶9} Neighbor 1 testified at trial he believed he was witnessing a rape. He ran outside and met another neighbor; they both looked around but the man and woman were gone. Neighbor 1 did not call the police.

{¶10} Neighbor 2 was inside her home when she heard what she thought was a child screaming outside. She eventually got up to look outside, and saw a black male and a white female; the female had her pants down and the male was standing behind her. Neighbor 2 yelled out the window, "You all better get out of here before I call the cops." She watched the female walk away with her pants still down; the male walked behind her. Neighbor 2 saw the male's face. She saw the pair go into the alley behind her house and went outside to look. She saw a pair of women's flip-flop sandals in the alley.

{¶11} Neighbor 2 did not call the police but spoke with them later when they canvassed the neighborhood. She gave a statement and recognized the female in the back of the patrol car as the one she saw earlier. Neighbor 2 viewed a photo lineup about a week after the incident and identified appellant as the male she observed. She identified appellant at trial as the man she observed on July 11, 2011.

{¶12} Neighbor 3 was sitting in a parked car outside the apartment building, waiting for the rain to stop and talking to his sister. He noticed a man come around the corner with a girl, holding her from behind, pushing her along up the driveway of the

apartment building. Neighbor 3 thought the pair must be boyfriend and girlfriend because the man had one hand on the woman's stomach and the other around her neck. The pair went up the driveway and out of Neighbor 3's sight.

{¶13} Neighbor 3 next saw the man running and pulling his pants up. The woman came back around the front of the building, too. Neighbor 3 testified the woman "looked him dead in the face, terrified," and took off running, barefoot, almost getting struck by a car. Neighbor 3 was outside later when the police came by with the woman in the backseat of the cruiser, but he did not want to get involved.

*The Investigation*

{¶14} Ptl. Tim Marks was dispatched to C.C.'s residence in reference to a possible sexual assault. Upon his arrival, he found C.C. in her front yard with her clothes in her hand, visibly upset. As she spoke with Marks, she seemed nervous; he could tell she had been crying. C.C. told Marks what happened and described a spot on her blouse where appellant ejaculated. Marks could see the wet spot. The clothing was bagged as evidence.

{¶15} Marks placed C.C. in his patrol car and drove her around the neighborhood to attempt to determine where the crime occurred. She pointed out an "alley" that was actually a long driveway between two apartment buildings. Directly in the middle of the driveway lay a pair of women's pink flip-flop sandals, with one sandal broken. C.C. identified the sandals as hers. Police also recovered a blue lighter that she thought might belong to appellant. C.C. told Marks about the woman who yelled out the window, so police canvassed the neighborhood for witnesses.

{¶16} C.C. provided a physical description of her assailant. She later was not able to identify him from a photo line-up, however.

{¶17} Detective Terry Monter investigated the assault by speaking to C.C. and the other witnesses. He also showed the witnesses photo lineups, and Neighbor 2 identified appellant. Monter submitted C.C.'s clothes to the Canton-Stark County Crime Lab for DNA analysis; the stain on her blouse tested positive for semen, and a positive DNA match was made with appellant.

{¶18} Appellant was arrested and brought in for an interview. He initially denied any contact with C.C. on July 11, 2011, but when confronted with the DNA evidence, claimed C.C. was a prostitute who "jacked him off." He said she wiped her hand on the front of her shirt afterward.

*Appellee's Evidence at Trial*

{¶19} Appellee called C.C., neighbors, and police to establish the facts of the attempted rape and kidnapping offenses. In addition to the facts related here, forensic scientists from the crime lab testified that the semen stain was on the interior lower back of C.C.'s blouse. No biological material was found elsewhere on the blouse. C.C.'s leggings were soiled with dirt and contained fragments of dried plant material. The DNA in the stain on C.C.'s blouse matched a DNA sample obtained from appellant.

*Appellant's Testimony*

{¶20} Appellant testified on his own behalf and claimed C.C. offered to perform a sexual act for $20. He denied taking his clothes off, stating he only lowered his zipper, and testified C.C. never took her clothes off at all. He admitted to a criminal record including felony convictions of arson, burglary, and terroristic threats. Appellant

stated that he and C.C. lived on the same street and he knew her from around the neighborhood although he didn't know her name. He claimed he has a problem with prostitutes "stalking" him.

*Indictment, Trial, Conviction, and Sentence*

{¶21} Appellant was charged by amended indictment with one count of attempted rape pursuant to R.C. 2907.02(A)(2) and 2923.02(A), a felony of the second degree, and one count of kidnapping pursuant to R.C. 2905.01(A)(4), a felony of the first degree. Appellant entered pleas of not guilty and the case proceeded to trial by jury. Appellant moved for judgments of acquittal at the close of appellee's evidence and at the close of all of the evidence; the motions were overruled. Appellant was found guilty as charged. A sentencing hearing was held and the trial court found appellant to be a repeat violent offender. The parties agreed that the offenses of attempted rape and kidnapping merged for the purpose of sentencing, and appellee elected to sentence on the offense of kidnapping. The trial court sentenced appellant to a prison term of ten years on Count II, kidnapping, consecutive to a term of ten years on the repeat violent offender specification.

{¶22} Appellant now appeals from the judgment entries of conviction and sentence.

{¶23} Appellant raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶24} "I. THE TRIAL COURT ERRED WHEN IT FOUND APPELLANT GUILTY OF THE REPEAT VIOLENT OFFENDER SPECIFICATION."

{¶25} "II.  THE TRIAL COURT'S IMPOSITION OF THE MAXIMUM SENTENCE WAS CLEARLY AN ABUSE OF DISCRETION."

{¶26} "III.  THE JURY'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

**ANALYSIS**

I.

{¶27} In his first assignment of error, appellant argues he was wrongfully convicted of the repeat violent offender specification because his prior convictions do not fall within the definition found in R.C. 2929.01(CC).

{¶28} A "repeat violent offender" is defined in R.C. 2929.01(CC) as a person about whom both of the following apply:

(1) The person is being sentenced for committing or for complicity in committing any of the following:

(a) Aggravated murder, murder, any felony of the first or second degree that is an offense of violence, or an attempt to commit any of these offenses if the attempt is a felony of the first or second degree;

(b) An offense under an existing or former law of this state, another state, or the United States that is or was substantially equivalent to an offense described in division (CC)(1)(a) of this section.

(2)  The person previously was convicted of or pleaded guilty to an offense described in division (CC)(1)(a) or (b) of this section.

{¶29} The amended indictment contained a specification that appellant was a repeat violent offender pursuant to R.C. 2929.01(CC).  On June 12, 2012, appellee filed a Notice of Prior Conviction, attached to which is a certified copy of a judgment entry dated February 12, 1992, reflecting appellant's sentence and stating in pertinent part:

> * * * *.  [Appellant] appeared in court, having previously entered a plea of guilty to the following (specify name of offense, degree, and section number): Count 1, Arson, a felony of the third degree, in violation of R.C. 2909.03(A)(1); Count 2, Burglary, an aggravated felony of the second degree, in violation of R.C. 2911.12; and Count 3, Theft, a felony of the fourth degree, in violation of R.C. 2913.02.* * * *.

{¶30} Appellant meets the first requirement for sentencing as a repeat violent offender because he was sentenced in the case sub judice for a felony of the first degree that is an offense of violence [kidnapping pursuant to R.C. 2905.01(A)(4)].  Both of these offenses are contained within the definition of "offense of violence" found in R.C. 2901.01(9)(a):

> "Offense of violence" means any of the following:
>
> A violation of section 2903.01, 2903.02, 2903.03, 2903.04, 2903.11, 2903.12, 2903.13, 2903.15, 2903.21, 2903.211, 2903.22, 2905.01, 2905.02, 2905.11, 2905.32, 2907.02, 2907.03, 2907.05, 2909.02, 2909.03, 2909.24, 2911.01, 2911.02, 2911.11, 2917.01, 2917.02, 2917.03, 2917.31, 2919.25, 2921.03, 2921.04, 2921.34,

or 2923.161, of division (A)(1), (2), or (3) of section 2911.12, or of division (B)(1), (2), (3), or (4) of section 2919.22 of the Revised Code or felonious sexual penetration in violation of former section 2907.12 of the Revised Code;

***.

{¶31} Finally, appellant was properly found to be a repeat violent offender pursuant to R.C. 2929.01(CC)(2) because of his previous conviction for burglary as "an aggravated felony of the second degree." While the certified copy of the judgment entry submitted by appellee does not denote the subsection of appellant's burglary conviction, it is demonstrated to be a felony of the second degree, therefore a violation of R.C. 2911.12(A)(1) or R.C. 2911.12(A)(2) and thus an offense of violence pursuant to R.C. 2901.01(9)(a). Where no subsection is identified, a finder of fact may reasonably infer the subsection, and find the defendant committed an offense of violence, by reasonable implication based upon the degree of the prior conviction. *State v. Craft*, 181 Ohio App.3d 150, 2009-Ohio-675, 908 N.E.2d 476 (12th Dist.), ¶ 37-39; *State v. Daniel*, 10th Dist. Franklin Nos. 05AP-564 and 05AP-683, 2006-Ohio-4627, ¶ 57-60.

{¶32} We therefore find the trial court did not err in finding appellant to be a repeat violent offender and appellant's first assignment of error is overruled.

II.

{¶33} In his second assignment of error, appellant argues the trial court erred in imposing the maximum sentence. We disagree.

{¶34} First, we note the parties agreed that Count I, attempted rape, merged with Count II, kidnapping, for purposes of sentencing, and appellee elected to sentence

on Count II. Appellant argues the trial court abused its discretion in sentencing him to maximum terms upon one count of kidnapping and the repeat violent offender specification. Appellant acknowledges the terms of ten years each are within the statutory range for these offenses but asserts the trial court failed to "properly consider the statutory purposes and factors of statutory sentencing."

{¶35} In *State v. Kalish*, 120 Ohio St.3d 23, 896 N.E.2d 124, 2008–Ohio–4912, the Ohio Supreme Court established a two-step procedure for reviewing a felony sentence. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Kalish* at ¶ 4. If the first step is satisfied, the second step requires the trial court's decision be reviewed under an abuse-of-discretion standard. Id. We have recognized that "[w]here the record lacks sufficient data to justify the sentence, the court may well abuse its discretion by imposing that sentence without a suitable explanation." *State v. Firouzmandi*, 5th Dist. Licking App.No.2006–CA–41, 2006–Ohio–5823, ¶ 52.

{¶36} We first note that subsequent to the Ohio Supreme Court's Foster decision, "[t]he decision to impose the maximum sentence is simply part of the trial court's overall discretion in issuing a felony sentence and is no longer tied to mandatory fact-finding provisions." *State v. Parsons*, 7th Dist. Belmont No. 12 BE 11, 2013–Ohio–1281, ¶ 14.

{¶37} Appellant argues the trial court abused its discretion in imposing a maximum sentence for one count of kidnapping asserting there is no evidence the victim sustained any physical or psychological harm and there is no evidence appellant

used a weapon. We disagree with appellant's characterization of the record; the victim testified to the terror she experienced and disinterested witnesses testified to the fact that she was screaming and visibly traumatized by her experience. Moreover, we decline to accept appellant's argument that kidnapping a victim in broad daylight in view of three witnesses should count favorably on his behalf in sentencing. We find no abuse of discretion in the trial court's imposition of a ten-year sentence for kidnapping.

{¶38} Appellant further argues the trial court did not sufficiently explain its decision in imposing a ten-year sentence for the repeat violent offender specification. We have reviewed the record of the sentencing hearing and note the trial court referenced the testimony at trial, appellant's prior criminal history, and his purpose in fashioning a sentence which would protect the public and serve as a deterrent to future crime. We find the trial court did not abuse its discretion in sentencing appellant to a ten-year term upon the repeat violent offender specification.

{¶39} Appellant's second assignment of error is overruled.

III.

{¶40} In his third assignment of error, appellant argues his convictions for attempted rape and kidnapping are not supported by sufficient evidence and are against the manifest weight of the evidence. We disagree.

{¶41} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which

the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶42} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶43} Appellant was found guilty of one count of attempted rape pursuant to R.C. 2907.02(A)(2) and R.C. 2923.02(A). To establish appellant's guilt of this offense, appellee was required to prove he purposely took a substantial step in a course of conduct planned to culminate in sexual conduct with C.C., having purposely compelled C.C. to submit by force or threat of force. *State v. Woods*, 48 Ohio St.2d 127, 132, 357 N.E.2d 1059 (1976); R.C. 2907.02(A)(2). "Force" is defined as any violence, compulsion, or constraint physically exerted by any means upon or against a person or

thing. R.C. 2901.01(A)(1). Appellant was also found guilty of one count of kidnapping pursuant to R.C. 2905.01(A)(4), which states in pertinent part, "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person* * * [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will."

{¶44} Appellant argues his contact with C.C. was consensual, but the only evidence in support of his argument is his own self-serving testimony at trial, which the jury was free to accept or reject. The weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002-Ohio-2126, 767 N.E.2d 216. Appellant's testimony was contradicted by C.C.'s account and also by the physical evidence. The semen stain on the interior lower back of C.C.'s blouse corroborates her version of events and contradicts appellant's.

{¶45} Moreover, this is the rare rape case in which disinterested witnesses observed key portions of the encounter between appellant and C.C., corroborating C.C.'s testimony that her contact with appellant was against her will.

{¶46} Viewing the evidence and inferences reasonably drawn therefrom in the light most favorable to appellee, we conclude any rational trier of fact could have found all of the essential elements of attempted rape and kidnapping beyond a reasonable doubt. The record is devoid of any evidence the jury lost its way in resolving conflicts in the evidence and appellee's evidence supports the guilty verdict of the trial court.

{¶47} Accordingly, appellant's third assignment of error is overruled.

**CONCLUSION**

{¶48} Having overruled appellant's three assignments of error, we affirm the judgment of the Stark County Court of Common Pleas.

By: Delaney, J. and

Hoffman, P.J.

Farmer, J., concur.

_____

HON. PATRICIA A. DELANEY

_____

HON. WILLIAM B. HOFFMAN

_____

HON. SHEILA G. FARMER